**Forest Silva TUCKER, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**Civ. No. 49646.**

United States District Court
N. D. California.

May 27, 1969.

Forest Silva Tucker, in pro. per.

Cecil F. Poole, U. S. Atty., Harvey L. Ziff, Asst. U. S. Atty., San Francisco, Cal., for respondent.

### MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE SENTENCE

GEORGE B. HARRIS, Chief Judge.

Forest Tucker was charged by indictment with having committed an armed robbery of the First Savings and Loan Association in Berkeley, California, on December 7, 1951. After trial by jury before this Court he was found guilty as charged on May 20, 1953. He was sentenced to serve a term of 25 years.

He has filed a motion herein pursuant to Title 28 U.S.C. § 2255 seeking to vacate said sentence after a lapse of 15 years. He contends that the sentence should be vacated for the reason that evidence of prior invalid convictions was referred to on cross-examination of the defendant during the trial for purposes of impeachment.

Tucker, in effect, urges that the rationale of Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) [1] bars the use of felony convic-

---

1. "To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense (see Greer v. Beto, 384 U.S. 269, 86 S.Ct.

tions for *impeachment*, when those convictions were obtained in violation of the standards of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1961).

The United States Attorney has conceded that with respect to two of said prior judgments of conviction, the defendant was not informed of his right to the assistance of counsel and did not waive his constitutional right to be represented by counsel.[2] Respondent denies that petitioner was thus prejudiced and contends that the rule of *Burgett* has no application. Further, that it is not to be retroactively applied.

The Court has concluded:

(a) That the use of the constitutionally invalid prior convictions on cross-examination for impeachment purposes was error;

(b) That the error was harmless under the standards of Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### The Factual Background

The evidence presented at the trial overwhelmingly supported the charge contained in the indictment. The Government's case in chief consisted of the following evidence:

Four employees of the Savings and Loan Association made in-court identification of Tucker as the man who had committed the robbery on December 7, 1951. These employees were:

1. Marilyne Judson[3] who, in addition to her in-court identification, testified that she had observed Tucker in the Association also on December 5, 1951 and December 6, 1951.[4] She further testified that Tucker touched a cash box in the course of the robbery,[5] and that the cash box could not be reached by a customer under normal circumstances;[6]

2. Ethel Starnes[7] who, in addition to her in-court identification, testified that she had observed Tucker in the Association also on December 6, 1951.[8] She further testified that Tucker took money from her cash box during the robbery.[9]

3. Ethel Wegner[10] who, in addition to her in-court identification, testified that she had observed Tucker in the Association also on December 5, 1951 and December 6, 1951.[11]

Sebastian Latona,[12] Federal Bureau of Investigation fingerprint examiner with twenty-one years experience, testified that Tucker's fingerprint was found on the cash box which Marilyne Judson and Ethel Starnes had previously testified was touched by Tucker in the course of the robbery.

Howard Neuberg,[13] Special Agent for the Federal Bureau of Investigation, testified that Tucker claimed that his name was Rick Bellew when Neuberg arrested him.

William Poole,[14] Special Agent for the Federal Bureau of Investigation, testified that he interviewed Tucker after his arrest and that Tucker told him that he had never been in the First Savings and Loan Association in Berkeley. Poole also testified that Tucker told him that he had owned the gun found in the car since February, 1951.

1477 [16 L.Ed.2d 526]), is to erode the principle of that case." (p. 115, 88 S.Ct. p. 262)

2. Findings and Judgment of Court in People of the State of California v. Forest Silva Tucker, #25174, Dept. 2, Superior Court of the State of California, In and for the County of Alameda.

3. RT 27–50

4. RT 31

5. RT 34

6. RT 30

7. RT 51–69

8. RT 56

9. RT 56

10. RT 70–95

11. RT 72

12. RT 116–145

13. RT 16–20

14. RT 112–115

Tucker's defense was based on his own testimony and that of his friend Rick Bellew, whose name Tucker had used when arrested. Rick Bellew testified that he was having lunch with Tucker in San Francisco at the time when the robbery occurred.[15] On direct examination, Tucker denied that he told Special Agent Poole that he had never been in the First Savings and Loan Association in Berkeley,[16] claimed that he had been there on December 5, 1951,[17] and claimed that he was having lunch with Rick Bellew at the time of the robbery.[18]

On cross-examination, Tucker claimed he had owned the gun found in the car for only one year, and denied making a contradictory statement to Special Agent Poole. Tucker committed himself to the position that he had touched Ethel Starnes' cash box while it was on the counter, and had touched the box only one time.[19] Tucker claimed that much of the money on which he was living was obtained by writing songs for various persons, but he refused to disclose the names of any of those persons.[20]

On rebuttal, Tucker's story was thoroughly discredited, and hence his credibility impeached, by further testimony from fingerprint expert Latona, and Savings and Loan Association employee Ethel Starnes. Latona testified that Tucker's same fingerprint was found in two places on the cash box, thereby discrediting Tucker's story that he had touched it only one time.[21]

*The Error Was Harmless Under the Standards of Chapman v. State of California*

The question of guilt or innocence in the case at bar was manifestly not a close one. This Court is of the firm belief that the error, as conceded, was harmless beyond a reasonable doubt.

Although the invalid prior convictions were referred to on cross-examination, they were in effect merely cumulative, in that Tucker's testimony had been successfully impeached by prior inconsistent statements made to the Federal Bureau of Investigation agents, and by rebuttal testimony which demonstrated that portions of petitioner's testimony was improbable and untrue.

Tucker's testimony was successfully impeached, and, in fact, demolished by additional items:

(a) He was impeached by the prior inconsistent statements he made to agent Poole that he owned the gun found prior to the robbery, and that he had never been in the First Savings and Loan Association in Berkeley.

(b) The Government's testimony of Latona and Starnes proved beyond doubt that Tucker's story about touching the cash box once while it rested on the counter was a complete fabrication.

(c) The Government's case in chief pointed unerringly to Tucker as the perpetrator of the armed robbery, and in part consisted of direct evidence supplied by four eye witnesses to the robbery, each of whom had a clear and unobstructed view of the robber.

It should be manifest that Tucker's testimony was contradicted by convincing and extensive evidence offered and introduced by the prosecution.

The use of the prior convictions did not infect the trial proceedings so as to result in a miscarriage of justice, and there is no reasonable possibility that the error complained of contributed to the ultimate conviction.

The Court concludes that the foregoing references, together with a review of the trial transcript, represent a compelling showing justifying the finding that the claimed error was harmless be-

15. RT 197–205

16. RT 156

17. RT 156

18. RT 153

19. RT 177–179

20. RT 190

21. RT 133

yond a reasonable doubt. Cf. In re Dabney, 71 A.C. 1, 76 Cal.Rptr. 636, 452 P. 2d 924, wherein Mr. Justice Tobriner, Associate Justice of the Supreme Court of California, in referring to Burgett v. State of Texas, supra, said:

> We do not believe that the Supreme Court's description of the error as inherently prejudicial means that it can never be found "harmless beyond a reasonable doubt" within the meaning of *Chapman*, for the court apparently applied the *Chapman* test in *Burgett*. It did not state that because the error was inherently prejudicial it could never be deemed harmless, but instead stated that the error was inherently prejudicial and that "we are unable to say that the instructions to disregard it made the constitutional error 'harmless beyond a reasonable doubt' * * *." It did not foreclose the possibility that on another record presenting different facts it could conclude that such error was harmless. By describing the error as inherently prejudicial, the court may have meant only that such error is always to some extent harmful by reason of its essential character and is therefore different from error in the admission of other unconstitutionally obtained evidence that is not always harmful, such as, for example, innocent responses to an interrogation not preceded by required *Miranda* warnings. (Miranda v. State of Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 [10 A.L.R.3d 974].) In this sense of 'inherently,' used as descriptive of the essential character of the error, com-

menting on a defendant's failure to testify is also inherently prejudicial. (See Griffin v. [State of] California (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.) Such error, however, may be found harmless under *Chapman*. Accordingly, we adhere to our holding in People v. Coffey, supra [67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15,] that the introduction into evidence of an unconstitutional prior conviction is not prejudicial per se and therefore does not necessarily effect reversible error. Both the court's language in *Burgett* and the background provided by *Spencer* [v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606,] make clear, however, that only the most compelling showing can justify finding such error harmless beyond a reasonable doubt.

*Retroactivity*

There are two elements necessary to establish before the error herein may be regarded as reversible. First, that the error was not harmless within the standards of Chapman v. State of California, supra; and second, the rule must be regarded, within legal contemplation, as retroactive.

In view of the Court's express finding that the error complained of by petitioner resulted in harmless error, it is unnecessary to pass upon the issue of retroactivity.[22]

Accordingly, it is ordered that this petition for relief pursuant to 28 U.S.C. § 2255 must be, and hereby is,

Denied.

---

22. The issues arising under the rationale of Burgett v. State of Texas, supra, are presented in the "Petition for Rehearing and Suggestion of the Appropriateness of a Rehearing En Banc" in Shorter, Appellant, v. United States of America, Appellee, 412 F.2d 428, pending in the United States Court of Appeals for the Ninth Circuit (Cf. dissenting opinion of United States District Judge, Roger D. Foley, Jr., in Shorter v. United States, 412 F.2d 431, May 6, 1969).