**Forrest S. TUCKER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 24839.**

United States Court of Appeals,
Ninth Circuit.

Sept. 28, 1970.

Thompson, J., dissented and filed opinion.

Forrest S. Tucker, in pro. per.

James L. Browning, U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and THOMPSON, District Judge.*

HAMLEY, Circuit Judge:

Forrest S. Tucker appeals from a district court order denying his motion, made under 28 U.S.C. § 2255, to vacate the judgment convicting him of armed robbery and to set aside the sentence based thereon. The judgment and sentence of imprisonment for twenty-five years, entered on May 20, 1953, was affirmed by this court in Tucker v. United States, 214 F.2d 713 (9th Cir. 1954). The district court opinion now under review in this section 2255 proceeding is reported in 299 F.Supp. 1376 (N.D.Cal. 1969).

After Tucker had testified in his 1953 trial for the armed robbery, the Government introduced evidence of his three prior felony convictions. This evidence was received for the purpose of impeaching Tucker's own testimony offering an alibi defense. In addition, after the jury had entered its verdict of guilty, the trial judge called for further information, in the form of a Federal Bureau of Investigation report concern-

---

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

ing Tucker's prior convictions, for use in determining the sentence to be imposed.

On June 10, 1966, the Superior Court of Alameda County, California, in case No. 25,174, set aside two of Tucker's prior convictions on the ground that "the defendant was neither advised of his rights to legal assistance nor did he intelligently and understandingly waive this right to the assistance of counsel." The Government concedes that these two prior felony convictions were invalid under Gideon v. Wainwright, 372 U.S. 335, 344–345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In this section 2255 proceeding Tucker argues that his 1953 conviction is invalid, under the rule of Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed. 2d 319 (1967), because his prior uncounseled convictions were used at his trial to impeach his credibility and to influence the court in imposing sentence.

In *Burgett,* the Supreme Court stated that

"[t]o permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense  *  *  *  is to erode the principle of that case." 389 U.S. at 115, 88 S.Ct. at 262.

This rule is being applied retroactively by this court and other courts of appeals which have had occasion to consider the problem.[1]

The *Burgett* rule against the use of uncounseled convictions to prove guilt or enhance punishment precludes the use of such evidence to impeach a defendant's credibility as a witness. Gilday v. Scafati, 428 F.2d 1027 (1st Cir.1970).[2]

We are also in agreement with the further ruling in *Gilday,* for the reasons there stated, that the reception of evidence pertaining to prior convictions, constitutionally erroneous under *Burgett* may, under the circumstances of a particular case, be harmless beyond a reasonable doubt, applying the principle announced in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under *Chapman,* an error of constitutional proportions can be disregarded as harmless if the prosecution proves beyond a reasonable doubt that the error "did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. at 828.[3]

The nature of defendant's testimony at the trial, and the overwhelming weight of the testimony to the contrary are fully described in the district court opinion, 299 F.Supp. 1376, at 1377–1378. We agree with the district court that defendant's testimony was completely discredited by evidence other than that pertaining to the prior convictions. This leads us to conclude that the prosecution firmly proved that the evidence of prior convictions did not contribute to the verdict obtained and that, with respect to the verdict of guilty, the error in receiving such evidence was therefore harmless beyond a reasonable doubt.

---

1. *See* Tucker v. Craven, 421 F.2d 139 (9th Cir. 1970); Gilday v. Scafati, 428 F.2d 1027 (1st Cir. 1970); Oswald v. Crouse, 420 F.2d 373 (10th Cir. 1969); Losieau v. Siegler, 406 F.2d 795 (8th Cir. 1969); Williams v. Coiner, 392 F.2d 210 (4th Cir. 1968). The *Gilday* opinion contains a good statement of the reasons why *Burgett* should be applied retroactively.

2. The question of whether *Burgett* precludes use of a prior conviction, invalid under Gideon v. Wainwright, to impeach a defendant's testimony in a subsequent trial on another charge, was argued in this court in Shorter v. United States, 412 F.

2d 428 (9th Cir. 1969). However, in that case we did not decide the question because it was the defendant, and not the prosecution, who offered the evidence pertaining to a prior conviction.

3. The *Chapman* court stated that there is little, if any, difference between this statement of the governing principle, and the statement in Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) that "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *See also,* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

As noted above, the evidence pertaining to Tucker's prior convictions was submitted not only to affect his credibility as a witness, but also to assist the trial court in fixing the sentence. The twenty-five year prison sentence imposed following Tucker's conviction for armed robbery, in violation of 18 U.S.C. § 2113(a) and (d), was the maximum allowable under the statute.

There is a reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed. Therefore, as to the sentencing, we are unable to conclude that the reception of such evidence was harmless beyond a reasonable doubt.

Accordingly, the judgment of conviction is affirmed, but the cause is remanded to the district court for resentencing without consideration of any prior convictions which are invalid under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

THOMPSON, District Judge (dissenting).

I respectfully dissent. This Court has not yet held that the rule of Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L. Ed.2d 319 (1967), is applicable to constitutionally infirm convictions used for impeachment. This is the case in which it should be declared that a convicted person cannot attack his conviction on the ground that a constitutionally infirm prior conviction was used for impeachment. This Court has not yet held that the rule of Burgett v. Texas, *supra*, applies to invalidate a sentence where a constitutionally infirm prior conviction was called to the attention of the sentencing judge by presentence report, or otherwise, before sentence was imposed. This is the case in which it should be declared that a convicted defendant cannot attack the sentence imposed by showing that the sentencing judge was informed about a constitutionally infirm prior conviction.

This writer cannot believe that the Supreme Court intended such a broad interpretation and application of the *Burgett* rule. Viewed realistically, it means that the most hoary and ancient of the confirmed, repetitive recidivists may, by applying the "domino theory" whereby the earliest of the convictions is declared void by application of Gideon,[1] fell each of the ensuing convictions and establish a clean unsullied record of pro-social conduct.

It has been a fundamental of our case-made jurisprudence that the principles announced in pertinent precedent should be viewed and interpreted in the light of the facts of the particular case. This is a salutary principle which this writer believes has not been entirely abandoned in contemporary jurisprudence. The principle recognizes the problems inherent in communication and expression, the difficulties of achieving pinpoint accuracy and the non-existence of words expressing exactly the same concept for the writer and the reader, the speaker and the listener. It recognizes the human frailty of inability to conceive, imagine and anticipate the applications which will be sought to be made of an announced principle, howsoever accurately expressed with semantic exactness. The principle also recognizes that judges are human beings and writing in favor of a position taken, however dispassionately, may become somewhat polemic in supporting the soundness of the decision advocated. This writer admires the genius of our system which contemplates a case by case review under differing sets of facts of the principles formulated and articulated in earlier precedents.

The majority opinion is based upon the following quotation from Burgett v. Texas, *supra*:

"To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment

1. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

for another offense (see Greer v. Beto, 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right."

The majority relies upon Gilday v. Scafati, 428 F.2d 1027 (1st Cir.1970), where the First Circuit said:

"We conclude that the Burgett rule against use of uncounselled convictions 'to prove guilt' was intended to prohibit their use 'to impeach credibility,' for the obvious purpose and likely effect of impeaching the defendant's credibility is to imply, if not prove, guilt. Even if such prohibition was not originally contemplated, we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt. Moreover, such use compounds the original denial of the constitutional right just as surely as does use 'to prove guilt or enhance punishment.' Finally, defendant's privilege to testify or not to testify— Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)—Is seriously impaired if the price of testifying is the potential admission of invalid and possibly unreliable convictions which could not otherwise be admitted. We therefore hold that Burgett prevents the use of uncounseled convictions for purposes of impeachment."

I think the First Circuit and the majority of this Court rely on a too literal reading of the Burgett opinion in disregard of the principle I have urged that we should look to the facts and to what actually was decided. Narrowly, the holding of the Burgett case is that if void prior convictions are brought to the attention of the jury by the prosecution in a one-stage recidivist trial, the result is a denial of due process. In that situation, inasmuch as the enhancement of punishment is directly dependent upon the validity of the prior conviction, it is the absolute duty of the prosecution to assure itself of that validity.

My interpretation of Burgett is that the words "support guilt" refer to the situation where the prior conviction is an essential element of the crime charged. For examples, under federal law, it is unlawful for a felon to transport a firearm in interstate commerce (18 U.S.C. § 922) and under California law, it is an offense for a felon to come upon the grounds of a reformatory in the nighttime (Cal.Penal Code, § 171(b)). In such cases, the status or condition of having suffered the prior felony conviction is essential to support the conviction and the prosecution, quite properly, is not permitted to rely upon a void conviction to establish such status. And when the prior conviction is "used against a person * * * to enhance punishment for another offense", the Supreme Court, in my view, was alluding to recidivist statutes like the one involved in Burgett and like the Narcotics Drug Import and Export Act (21 U.S.C. § 174) and like the California Habitual Criminal Statute (Cal.Pen.Code, § 644). This is as far as I would now go in the application of Burgett, reserving, nevertheless, deference to the policy that it is worthwhile to consider future applications of the principle on a case-by-case basis.

In the present case, two prior felony convictions were used to impeach defendant at his federal armed robbery trial. These later turned out to be vulnerable under the Gideon principle. It is my thesis that this fact does not justify or support an attack upon the federal conviction. It seems to me that the position of the majority, "[T]he Burgett rule against the use of uncounseled convictions to prove guilt or enhance punishment precludes the use of such evidence to impeach a defendant's credibility as a witness", constitutes an unwarranted extension of the Burgett decision and will involve state and federal

courts in a morass of fruitless inquiry into the undiscernable prejudicial effect of such impeachment upon the trial as a whole. Further, the majority *sub silentio* overrules two decisions of the Court, Bloch v. United States, 238 F.2d 631 (1956), and Bloch v. United States, 226 F.2d 185 (1955), where the Court, in the first opinion, saw no error in a felony impeachment question asked by a prosecutor who knew the prior conviction was on appeal, and in the second affirmed the ruling despite the fact that the prior conviction had been reversed on appeal. Our Court there recognized that what really was in issue was the good faith of the prosecutor and that his use in good faith of a vulnerable prior conviction to impeach the defendant could not be relied upon to reverse the conviction. The same principle should be followed in the present case.

Moreover, I see no federal constitutional problem where the issue is properly analyzed as one of the prosecutor's good faith.

On the question of sentence, the factors involved are even more imponderable. The majority thinks the imposition of the maximum sentence shows that the priors were used to enhance sentence. In my experience, so many factors affect the imposition of sentence that I cannot accept the premise. There never will be a case where a post-conviction remedy court will be able to tell whether knowledge of one or more prior convictions affected the sentence unless the sentence given was mandated by statute so that the prior record could have no effect. In the present case, the sentencing judge conducted an extensive colloquy before imposing sentence. A portion is copied in the margin.[2] There is more, but it

---

2. "THE COURT: How old were you when you first suffered a conviction—17?
"THE DEFENDANT: Yes, sir.
"THE COURT: These cases carry heavy penalties. You knew that when you started these enterprises didn't you?
"THE DEFENDANT: I understand it does carry a heavy penalty.
"THE COURT: Do you know the reason underlying it?
"THE DEFENDANT: Yes, sir.
"THE COURT: There is no room for the Court to entertain elements of great sympathy because you were armed on the occasion in question and you probably would have shot, had the occasion arose.
"THE DEFENDANT: I have never been known to strike anybody, shoot anybody or harm anybody.
"MR. KARESH: Could I ask the agent a question? Is there any evidence of violence in the past criminal record— I don't mean the bank robberies—any of these larcenies that you know of?
"THE WITNESS: No, there is no actual shooting or anything of that nature.
"THE COURT: How long has this association with Rick Bellew been going on, since 1951 and '52?
"THE WITNESS: That would be my impression, but I believe they probably met first in the Louisiana penitentiary. Now then at the time that I interviewed Tucker, he told me that he first met Bellew in 1938, out here in California, and naturally later when we found out that he had served—he was serving a sentence

down there, that that probably was not the truth, and I would say that after he left the Louisiana penitentiary, he probably did not see Bellew again until somewhere in December of 1950 or January of '51, because prior to that, Bellew was incarcerated in the California penitentiary. I believe that he was paroled out of the penitentiary somewhere around the latter part of 1950, and since that time I would say that he has associated with Bellew—but just how much, or whether it was social or just along with these various activities, I couldn't say.
"THE COURT: Without disclosing whatever evidentiary matter might be at hand, does the defendant appear to be linked in more than several local felonies involving banks or loan companies?
"THE WITNESS: I would say this, that on the local loan companies in the Oakland Area—
"THE COURT: What kind of loan companies are they?
"THE WITNESS: Well, they are like the Personal Finance Company, Guarantee Finance Company, loan companies of that nature. And I would say that the evidence against him is very similar, in effect, of what was presented here, on those particular cases.
"THE COURT: Do [you] have fingerprint testimony and the like?
"THE WITNESS: I believe that there is, yes.
"THE COURT: I take it you do not present these cases—you did not present

seems to me to be a fair analysis that the sentencing judge was influenced primarily by defendant's proneness to violence and the number of other outstanding charges than anything else.[3] It is not uncommon in my experience for a sentencing judge to take into consideration other charges pending (many times detainers have been placed for them) in enhancement of punishment and for other prosecuting officials to drop charges if a sufficiently substantial sentence is imposed. It is not even unusual for a defendant against whom a number of detainers have been lodged to request a substantial sentence with the hope that the other charges will be dropped. On the present record, it is pure speculation that the invalidated prior convictions had an effect on the sentence.

Finally, I would like to suggest that when we consider the use of prior convictions for impeachment or when they are included in a pre-sentence presentation as part of the defendant's prior history, it is not the conviction—the formality of conviction—that is important. It is the conduct that is represented by the conviction. The witness' veracity is not impeached by the conviction. The conviction is only shorthand for the impeaching misconduct, and a rule of convenience has been adopted which permits impeachment by the shorthand method but prohibits it by showing other acts of misconduct, else the trial would be led into endless by-ways and side controversies. Invalidating the prior conviction does not erase the conduct on which it was based. This is even clearer in the field of sentencing where a competent presentence report does not simply recite the prior criminal record but describes the circumstances of each charge—even those that led to an acquittal. It is this history that influences the sentencing judge, not the formal convictions. For example, in a recent case the defendant had been acquitted of the charge of murdering his mother. It, nevertheless, was proper for the sentencing judge to consider that incident where a loaded weapon was involved as bearing on defendant's proneness to violent activity. And in the present case, the judge took into consideration conduct which had not yet been prosecuted to conviction—showing that it is the conduct, not the convic-

these cases until you determined the fate of this particular case, is that the problem involved?

"THE WITNESS: Well, these particular cases I am talking about are local —they are under the jurisdiction of the local police department and there is no Federal jurisdiction. Now I understand the District Attorney's office in Alameda County is waiting. What action they are going to take, I don't know.

"THE COURT: I assume that whatever sentence is meted out to the defendant in the case at bar will be considered in connection with the prosecution or absence of prosecution of those cases.

"THE WITNESS: I believe so.

"THE COURT: All right. Do you have anything further?

"MR. KARESH: No, Your Honor. Perhaps just one remark, that he did not strike anyone or shoot, did not hit anyone.

"THE COURT: There is one count in the indictment?

"MR. KARESH: Yes, Your Honor.

"THE COURT: Under which the defendant Forrest Silva Tucker has been found guilty. The Jury in its Findings has indicated that the defendant did knowingly, willfully and unlawfully put in jeopardy the lives of the aforenamed employees of the Loan Association by the use of a dangerous weapon, to wit, a hand gun. Under such circumstances, Subdivision 2113(d) is applicable, providing for the term of 25 years.

"Accordingly, Forrest Silva Tucker, are you ready for sentence?

"THE DEFENDANT: I am.

"THE COURT: It is the judgment and sentence of this Court that you be confined in a Federal penitentiary for the term of 25 years.

"That is all."

3. My quotation from the sentencing colloquy is not to suggest that I think this post-conviction remedy court has a problem which warrants trying to dissect the mind of the sentencing judge. I merely wish to picture the kind of swamp we are getting ourselves bogged down in.

tion, which is relevant. Many times the circumstances of a prior conviction will cause a court to discount and disregard it completely in imposing sentence.

These are additional reasons in support of my conclusion that the *Burgett* rule should be applied only where the formal record of conviction of a felony is essential to support guilt or to enhance punishment.

In the context of the foregoing, perhaps my earlier statement that the majority relies on a too literal reading of the quotation was incorrect. There the emphasis was on "support guilt" and "enhance punishment." But if the statement of principle in *Burgett* is read with strict literalness and the emphasis is placed on "to permit a *conviction* * * * to be used", then my conclusion, that it is the required use of the formal record of conviction to attain the result under attack that is important, is clearly correct.

The majority's treatment of the problems in this appeal is based on the necessary assumption that a federal constitutional issue of fair trial and due process of law is present whenever a jury or court is informed about a defendant's prior criminal record. Yet the decisions of the Supreme Court specifically refute this assumption: Spencer v. Texas, [4] 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), where the procedure of a one-stage recidivist trial was affirmed; Rundle v. Johnson, 386 U.S. 14, 87 S.Ct. 847, 17 L.Ed.2d 695 (1967), where the procedure of admission of prior crimes in a one-stage murder trial to assist the jury in fixing punishment was affirmed. These decisions, viewed in association with *Burgett,* suggest that the broad application of the *Burgett* rule to impeachment evidence and sentencing information is not warranted and not intended. Cf. United States ex rel. Smith v. Fay, 409 F.2d 564 (2nd Cir.1969). While reference to dissenting opinions in support of a contention is apt to invoke ridicule, I believe the succinct dissent of three Justices in Burgett v. Texas, 389 U.S. 109 at 120, 88 S.Ct. 258 at 264, 19 L.Ed.2d 319, to be pertinent:

"The record in this case shows no prosecutorial bad faith or intentional misconduct. To the extent that the prosecutor contemplated the use of prior convictions in a one-stage recidivist trial, his right to do so is of course established by Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, decided only last Term. The fact that the prior convictions turned out to be inadmissible for other reasons involves at the most a later corrected trial error in the admission of evidence. We do not sit as a court of errors and appeals in state cases, and I would affirm the judgment of the state court."

This approach to the problems reminiscent of the attitude of our Court in the *Bloch* cases, *supra,* although it was rejected by the majority of the Supreme Court in a true recidivist trail where the void prior conviction was an essential of the prosecutor's case, may nevertheless be revived to control judicial review in peripheral applications of the *Burgett* rule like the uses of it in this case.

I would affirm the District Court.

---

4. "It is contended nonetheless that in this instance the Due Process Clause of the Fourteenth Amendment requires the exclusion of prejudicial evidence of prior convictions even though limiting instructions are given and even though a valid state purpose—enforcement of the habitual-offender statute—is served. We recognize that the use of prior-crime evidence in a one-stage recidivist trial may be thought to represent a less cogent state interest than does its use for other purposes, in that other procedures for applying enhancement-of-sentence statutes may be available to the State that are not suited in the other situations in which such evidence is introduced. We do not think that this distinction should lead to a different constitutional result."