**Madison WILSON, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 74–1124.**

United States Court of Appeals, Ninth Circuit.

July 29, 1974.

As Amended on Denial of Rehearing and Rehearing En Banc April 22, 1976.

Richard D. Emery of Legal Services, Seattle, Wash., for plaintiff-appellant.

Charles Pinnell, Asst. U. S. Atty., Seattle, Wash., for defendant-appellee.

Before CARTER, HUFSTEDLER and TRASK, Circuit Judges.

OPINION

JAMES M. CARTER, Circuit Judge.

■ The judgment of the district court in denying the motion to vacate and set aside the judgment and commitment dated February 19, 1962, is affirmed. We find that the requirement of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) has been met in this case by the district judge's reconsideration of the earlier sentence. *See United States v. Eidum*, 474 F.2d 581 (9 Cir. 1973). *Tucker* does not require resentencing, but rather, mandates that prior sentences be reconsidered. This has been done in the present case. We find no basis in this case for refuting the district judge's determination of the impact of the three prior invalid marijuana convictions on his sentencing of petitioner for the six heroin violations.

We take note of *Leano v. United States*, 494 F.2d 361 (9 Cir. 1974). The case was not cited in the briefs. In that case this court cited *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and the case below, *Tucker v. United States*, 431 F.2d 1292 (9 Cir. 1972) and remanded the case for "resentencing without consideration of any prior conviction which [is] invalid under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799."

■ *United States v. Eidum*, 474 F.2d 581, 582 (9 Cir. 1973) states the general rule in this circuit:

"This court will not refute the judge's own estimation of the deleterious impact of prior convictions on his determination of sentence. The record shows on its face that the judge did not consider those convictions in imposing sentence." The rule was followed and relied on by *Dukes v. United States*, 492 F.2d 1187 (9 Cir. 1974).

*Leano, supra,* created an exception to *Eidum* and *Dukes* providing that where the record of sentencing shows a "reasonable probability" that the prior invalid conviction played a vital role in the fixing of the questioned sentences, a reversal for resentencing was required.

We think *Leano* is distinguishable from our case. There this court stated: "The initial motion was denied by the sentencing judge, who observed in passing that he had not considered Leano's prior conviction when fixing punishment. . . . [T]he transcript of the proceedings on Leano's arraignment for sentence makes evident the 'reasonable probability' (*Tucker v. United States*, 431 F.2d 1292 . . .) that the prior conviction played a vital role in the fixing of the questioned sentence." 494 F.2d at 362.

In *Leano* the sentences were for violation of 21 U.S.C. § 176a, which provided for a term of not less than five and not more than twenty years for a first offender, and a term of not less than ten years and not more than forty years for a second offender. The United States Attorney, on filing the information showing the prior conviction, recommended the minimum of ten years for a second offender. The court agreed and so sentenced. There was no further discussion.

There was thus no support in the record for the court's statement that it had not relied on the prior conviction. Instead, it was clear that the trial judge imposed the ten-year sentence because of the prior conviction.

*Leano* is a case of a disclaimer, but is distinguished from *Eidum* and *Dukes* because the *actual sentence* of ten years as a stated "minimum" must be for an offense with a prior. Thus the sentence *as a minimum* of ten years can only be for priors. There was an actual contradiction of the disclaimer by the sentence.

*Tucker*, both in our court and also in the Supreme Court, relied on the fact that there was a *maximum* sentence imposed of 25 years upon one who already had unconstitutionally served more than ten years beginning at age 17, including five and one-half years on a chain gang. 404 U.S. at 448, 92 S.Ct. 589. There was no record of disclaimer by the trial judge of consideration of priors.

In our case there was an express disclaimer of consideration of priors which brings us back to *Eidum* and *Dukes* that the

disclaimer may not normally be overridden. It is not a *Leano* situation because the actual sentence is *not* inconsistent with the disclaimer. It is not a *Tucker* case because *Tucker* had no disclaimer and was an extremely aggravated situation.

In our case the transcript of the original sentencing on February 19, 1962, shows much more than appears in *Leano*.[1] The sentencing court reviewed the prior record of the defendant "which included offenses other than those set forth dating back to the 1920's." The court considered the defendant's background and his employment record, which was "almost nil." The court considered his narcotics record in the past and information that defendant was suspected of being active in the narcotics traffic since he was out on parole in 1960.

The penalty for first and second offenders was the same as in *Leano*. (Five years to twenty years for a first offender and ten years to forty years for a second offender.) Wilson was before the court on convictions of six counts involving heroin, three for violation of 26 U.S.C. § 4705(a) and three

---

1. ". . . [T]he Court doesn't anticipate the need for exceeding the maximum of a second offender, the maximum being very substantial as to a second offender, and in view of the counts here involved there is no question in my judgment that he should be treated as a second offender under the provisions of the applicable statutes.

Mr. Wilson, your presentence report sets forth your prior record which includes offenses other than those set forth dating back to the 1920's.

There were minor offenses up to that time and then more serious as the years progressed, including the offense that occurred according to the record . . . . .

\* \* \* \* \* \*

The presentence report covers your family history, born in Chicago, and you are aged 51 years and you have been arrested a number of times and served in various penal institutions and the last material offense, the last material imprisonment, was served at McNeil, is that right?

DEFENDANT WILSON: Yes.

THE COURT: And you have been out now since 1960 under supervision.

Your employment record is almost nil.

Your family background here, your father was accidentally killed by a gunshot wound in 1918. You were a young boy at the time, a young man, and your mother died in 1924 when you were 16 years of age.

The picture isn't a very good one so far as you are concerned . . . . .

\* \* \* \* \* \*

Do you have anything you wish to say?

DEFENDANT WILSON: Nothing to say, your Honor.

Do the best you can.

That is all I can say.

THE COURT: Do what?

DEFENDANT WILSON: The best you can.

THE COURT: You don't mean the most?

DEFENDANT WILSON: No, the less.

THE COURT: Mr. Opendack?

\* \* \* \* \* \*

THE COURT: Counts I, III and V are charged under 26 USC 4705(a) and the punishment provided under the United States Code is not less than 10 years on each count, and Counts II, IV and VI charge of violation of Title 21, United States Code, Section 174, and both carry the same penalty provisions of the minimum of 10 years.

It is clear to me, and I think the defendant apparently doesn't contest it, that he was involved in narcotics extensively, in narcotic traffic in the past and it would appear from the information contained in the report from the Narcotics Agents that they suspected this defendant of being active in the narcotic traffic since he was out on parole.

It isn't my thought that the defendant should be committed for the rest of his life merely because the offenses charged are such that that might be the time imposed.

It is also clear to me that the minimun [sic] should not be imposed here because this defendant as a second offender is one that is—is at least known to the narcotics bureau as being active.

It is my opinion, therefore, that the sentence will be imposed under one count which I believe is sufficient time to impose here.

He doesn't get parole of course. He does get good time off. How much time is applicable . . . [on a 15-year sentence]?

\* \* \* \* \* \*

MR. MINCKS: (Probation officer) 15 years, 1800 days.

THE COURT: Well, 1800 days is something between four and five years.

\* \* \* \* \* \*

THE COURT: Very well. It is the judgment of the Court on the findings of the jury that the defendant is guilty of six counts.

It is the judgment of the Court that the defendant is guilty of all six counts and it is the sentence of the Court that the defendant be committed under the first count for 15 years, and similar sentences on each count to run concurrently."

for violation of 21 U.S.C. § 174. The court sentenced Wilson to 15 years on each count, to run concurrently. The court took into account the fact that the defendant would be eligible for release in 1800 days, "something between four and five years."

The case was twice before the district court after the date of sentencing. On the first occasion, on November 27, 1970, the court stated in denying the § 2255 motion:

"At the time that this Court sentenced petitioner, first violations of 26 U.S.C. § 4705(a) and 21 U.S.C. § 174 required the Court to fix a sentence within a penalty range of five to twenty years. The sentence imposed on petitioner falls within this range. The Court did not rely on petitioner's previous record of convictions in determining the sentence imposed. Other information contained in the presentence report and the gravity of the six offenses petitioner was convicted of at the time formed the basis of the Court's decision."

On the second occasion, the court incorporated the paragraph above and again denied the motion to vacate the sentence. There was here no increase in the sentence either by an addition to the number of years or by a statement that he was impos-ing the "minimum" for second offenders. *Leano, supra.* fn. 3.

In affirming, we do not hereby adopt a rule that the trial court's statement that it did not rely on the invalid prior conviction *always* constitutes sufficient reconsideration to satisfy *Tucker. Leano, supra,* precludes such a rule. Rather, we hold that where, as here, there is a *substantial basis* in the record on its face to support the court's statement of non-reliance, then the reconsideration mandated by *Tucker* has been performed. *Leano* does not hold to the contrary, since in that case there was no substantial basis in the record to support a finding of non-reliance.[2]

Nor should the case be remanded for sentencing before another judge. *United States v. Tucker, supra,* disposes of this question:

"We cannot agree with the Government that a re-evaluation of the respondent's sentence by the District Court . . . will be either 'artificial' or 'unrealistic'.[8] " 404 U.S. at 449, 92 S.Ct. at 592.

The footnote adds:

"But the respondent's guilt of that offense hardly 'translates' into an 'inescap-

---

**2.** We see little difference between remanding for "reconsideration" or for "resentencing." The mental process used by the trial court on remand is the same.

In *United States v. Tucker* (404 U.S. 443, 449, 92 S.Ct. 589, 593, 30 L.Ed.2d 592), the Court remanded that case "to the trial court for *reconsideration* of the respondent's sentence." (Emphasis supplied.)

Various cases in other circuits have considered the problem after January 11, 1972, the date of *Tucker, supra,* in the Supreme Court, and hold that reconsideration alone is sufficient.

The *Fifth* Circuit has a line of cases after *Tucker* which follow *Lipscomb v. Clark,* 468 F.2d 1321 (5 Cir. 1972). In *Lipscomb, supra,* the court stated: "If the district court finds that the maximum sentence would still be appropriate, an order so setting forth would seem to comply with the requirements of *Tucker.*" *Id.* at 1323. *Rogers v. United States,* 466 F.2d 513 (5 Cir. 1972), *cert. denied,* 409 U.S. 1046, 93 S.Ct. 546, 34 L.Ed.2d 498 (1972); *Torres v. United States,* 490 F.2d 862 (5 Cir. 1974); *Brown v. United States,* 483 F.2d 116, 118 (4 Cir. 1973) and cases cited in note 2. *See Russo v. United States,* 470 F.2d 1357 (5 Cir. 1972).

In the *Eighth* Circuit, *McAnulty v. United States,* 469 F.2d 254, 256 (1972), *cert. denied,* 411 U.S. 949, 93 S.Ct. 1933, 36 L.Ed.2d 411 (1973) holds that where the trial judge expressly states that the sentence is appropriate, regardless of the invalidity or absence of prior convictions, a remand for resentencing would be pointless. *Accord Jorgenson v. United States,* 477 F.2d 905 (1973); *Ryan v. United States,* 485 F.2d 295 (1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1568, 39 L.Ed.2d 876. *See Taylor v. United States,* 472 F.2d 1178 (1973). There the court distinguished *McAnulty,* where the trial court stated "the sentence would be the same," from *Taylor* where the trial court said "resentencing would be of 'no consequence' since the original sentence was still within the permissible limits," and remanded for resentencing. 472 F.2d at 1180.

The *Tenth* Circuit is in accord, *United States v. Green,* 483 F.2d 469 (1973), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477 (1973) (trial court disavowed reliance on the prior convictions and distinguished *Tucker* ).

able' assumption that the trial judge would have imposed a maximum 25-year prison sentence if he had known that the respondent had already been unconstitutionally imprisoned for more than 10 years. It would be equally callous to assume, now that the constitutional invalidity of the respondent's previous convictions is clear, that the trial judge will upon reconsideration 'undoubtedly' impose the same sentence he imposed in 1953."

The judgment denying the motion to vacate the sentence is AFFIRMED.

HUFSTEDLER, Circuit Judge (dissenting):

I dissent both from the panel opinion and from the court's denial of rehearing en banc. The majority opinion attempts to avoid a visible head-on collision with *United States v. Tucker* (1972) 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592; *Leano v. United States* (9th Cir. 1974) 494 F.2d 361; and *Wheeler v. United States* (9th Cir. 1972) 468 F.2d 244, by translating Wilson's initial sentencing record into language that would bring *Wilson* into the narrow ambit of *United States v. Eidum* (9th Cir. 1973) 474 F.2d 581 and *Dukes v. United States* (9th Cir. 1974) 492 F.2d 1187. If Wilson's record resembled *Eidum* and *Dukes*, I could join in the majority's holding that *Tucker* error is not established when a section 2255 petitioner's averments of such error are wholly unsupported by the record of his original sentencing. But Wilson's record looks like the sentencing records in *Tucker* and *Leano*, and not like those in *Eidum* and *Dukes*. Because the majority holds that no *Tucker* violation occurred, its discussion of the appropriate remedy for a *Tucker* viola-

tion is dicta. Nevertheless, I cannot dismiss that discussion as harmless error because the majority opinion confuses the method of determining the existence of *Tucker* error with the remedy for that error once the violation is established. The opinion adds further disarray to this area of our circuit law that is already muddled.

### I. *Determination of a Tucker Violation.*

A *Tucker* violation occurs when a defendant has sustained constitutionally invalid prior convictions, and a sentencing judge took them into consideration in sentencing with adverse effect upon the defendant. In *Tucker*, the record of the initial sentencing showed that several prior convictions were brought to the attention of the sentencing judge, and some of them were constitutionally invalid. At the post-conviction proceedings, the sentencing judge disclaimed reliance on the invalid convictions.

In the record of the initial sentencing of Wilson, the challenged prior convictions were not only called to the judge's attention, the judge also indicated at least some reliance on them to treat the defendant as a second offender.[1] Here, as in *Tucker*, there was a " 'reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed.' " (*United States v. Tucker, supra,* 404 U.S., at 445–46, 92 S.Ct. at 591.)

Yet, the majority opinion in this case, at times, seems to say that no *Tucker* violation occurred (not that a *Tucker* violation occurred and was cured) because the sentencing judge disclaimed that he relied on the invalid prior convictions. In other words, no evidentiary hearing need be held on a section 2255-type petition claiming a *Tucker*

---

1. The following colloquy occurred at the 1962 sentencing:

 "THE COURT: All right; then the defendant is in a position of being a second or third offender?

 "MR. SMITH: Yes, sir.

 "THE COURT: The government takes the position he is a third offender?

 "MR. SMITH: Yes, your Honor.

 "THE COURT: However, as far as the penalty is concerned—

 "MR. SMITH: (Interposing) It is the same.

 "THE COURT: It is a minimum of ten years and the Court doesn't anticipate the need for exceeding the maximum of a second offender, the maximum being very substantial as to a second offender, and in view of the counts here involved there is no question in my judgment that he should be treated as a second offender under the provisions of the applicable statutes."

violation, if the sentencing judge before whom the petition is pending says that he did not consider the constitutionally infirm convictions. Moreover, that statement is impervious to appellate attack if there is anything in the record of the initial sentencing that can be used to back up the disclaimer.

The confusion manifested in the majority opinion between the remedy for a *Tucker* violation and a determination of whether a violation exists is shared by other opinions in our Circuit and by those from other circuits. As a result of this confusion, the circuits are in substantial conflict on the standards and procedures for determining the existence of a violation.

As earlier stated, no *Tucker* violation occurs unless (1) one or more constitutionally invalid prior convictions were brought to the sentencing judge's attention, and (2) "a reasonable probability" exists that the judge considered them in fixing the sentence. The problems that have fragmented the circuits are these: Upon what kind of record and using what kind of procedure should a district court, on collateral attack, decide whether the prior convictions were invalid and whether the sentencing judge considered the invalid priors?

Three quite different approaches to these problems have been developed, with variations of each. I will label the formulations as *Lipscomb*, from *Lipscomb v. Clark* (5th

Cir. 1972) 468 F.2d 1321; *Brown*, from *Brown v. United States* (4th Cir. 1973) 483 F.2d 116; and *Leano*, from *Leano v. United States* (9th Cir. 1974) 494 F.2d 361.

*Lipscomb* directs the district court first to assume that the challenged prior convictions are invalid and, on that assumption, to "review the records involved in this conviction" to determine whether the sentence given "would still be the appropriate sentence." (468 F.2d at 1323.) If the district court decides that it is appropriate, *Tucker* relief is denied. Only if it decides that the sentence would be inappropriate, should the court then hold an evidentiary hearing to decide whether the prior convictions were unconstitutional, and if they were, then the district court resentences.[2]

*Brown* adopts the first step and the "appropriateness" standard of the *Lipscomb* procedure, but upon a finding that the sentence would be inappropriate *Brown* directs that the petitioner invalidate each of the prior state convictions in the state in which they were imposed. After thoroughly exhausting state procedures and invalidating the prior convictions, the petitioner can then return to the district court for resentencing. Despite the cogent dissent by Judge Craven, the Fourth Circuit usually seems to adhere to some variation of *Brown*.[3] The Eighth Circuit sometimes follows both *Lipscomb* and *Brown*, and sometimes neither.[4]

---

**2.** *Lipscomb* is usually followed in the Fifth Circuit. (*E. g., Baker v. United States* (1974) 494 F.2d 508; *Torres v. United States*, 490 F.2d 862; *Jefferson v. United States* (1974) 488 F.2d 391; *Russo v. United States* (1972) 470 F.2d 1357. *But see Mitchell v. United States* (1973) 482 F.2d 289, 297; *Franchi v. United States* (1972) 464 F.2d 1035, 1035–36; *Davis v. Wainwright* (1972) 462 F.2d 1354, 1356.)

**3.** In *United States v. Dorman* (1974) 496 F.2d 438, the Fourth Circuit purported to follow *Brown* but reversed the first and second steps of the *Brown* procedure and required state court invalidation of the convictions as a predicate to seeking any § 2255 relief. In *Stepheney v. United States* (1975) 516 F.2d 7, the court, sitting en banc, returned to the order of the *Brown* procedure, but rejected a standard of "general appropriateness" and required that the district judge find "that the sentence actu-

ally imposed was uninfluenced by the prior convictions." (*Id.* at 9.) This standard, and the first step of the *Brown* procedure, was reaffirmed in *Whitley v. United States* (1975) 526 F.2d 591.

**4.** In *McAnulty v. United States* (1972) 469 F.2d 254 and *United States v. Simon* (1973) 488 F.2d 1094, the Eighth Circuit found that step one of the *Lipscomb/Brown* procedure had been satisfied by the district court's disclaimer. In *Ryan v. United States* (1973) 485 F.2d 295 and *Young v. United States* (1973) 485 F.2d 292, the court endorsed the *Brown* procedure, but appeared to adopt the *Dorman* order, *i. e.*, that state court invalidation must precede any § 2255 consideration. In *Taylor v. United States* (1973) 472 F.2d 1178, the court remanded for resentencing despite the district court's disclaimer that the allegedly invalid federal con-

Neither *Lipscomb* nor *Brown* is satisfactory, as the intra- and intercircuit disharmony involving them eloquently attests. Although *Brown's* exhaustion requirement has some superficial appeal, it cannot be squared with the letter or the spirit of *Tucker* because it creates unreasonable, indeed insurmountable, difficulties for the petitioner whose constitutional rights have been trampled and because it imposes unnecessary and intolerable additional burdens on both state and federal courts. *Lipscomb* fares little better than *Brown* because it leaves to the district judge the initial subjective determination whether the prior sentence was "appropriate," with no guidelines, no hearing, and no effective review. The *Lipscomb* and *Brown* approaches are particularly indefensible when we recall the primary importance of sentencing and the fact that the "worst" that can happen if the petitioner prevails is that he must be resentenced. Of greater moment, however, both are departures from the script that the Supreme Court wrote in *Tucker*, and are contrary to section 2255 (and to the myriad of cases interpreting the statute) which requires that an evidentiary hearing be held "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."

The genesis is *Tucker* itself. *Tucker* teaches that the place to begin ascertaining the existence of a *Tucker* violation is the record of the original sentencing. If, from the face of that record, it appears that the challenged prior convictions were called to the sentencing judge's attention and that there is reasonable probability that he relied on them, in whole or in part, to enhance punishment, and it further appears that the prior convictions challenged were constitutionally infirm, resentencing is mandated.

viction would " 'be of no consequence to the . . . sentences.' " (*Id.* at 1179.) Finally, in *James v. United States* (1973) 476 F.2d 936, the Eighth Circuit seemed to reject the *Lipscomb/Brown* procedures. Finding no disclaimer in the record, it remanded for resentencing, with no opportunity for determining the appropriateness of the original sentence. (*Id.* at 937–38.)

A "reasonable probability" of consideration is all that is required to meet the first condition. Under this standard, a violation can occur even if the sentencing judge could have legally given the identical sentence without considering the challenged priors. (404 U.S. at 449 n. 8, 92 S.Ct. 589.) The sentencing judge's unsworn disclaimer that he did not rely on the invalid prior convictions is irrelevant.[5] As Mr. Justice Blackmun pointed out in his *Tucker* dissent, the sentencing judge had disclaimed reliance. (404 U.S. 449, 452, 92 S.Ct. 589.)

The approach adopted by this Circuit in *Leano* is consistent with the procedure and standard mandated by *Tucker*. In *Leano* priors, challenged, as uncounseled, were brought to the sentencing judge's attention. An inference arose from that record that the invalid priors influenced the sentence, although the sentencing judge could have given the same sentence without regard to the priors. The sentencing judge informally disclaimed reliance during the section 2255 non-evidentiary hearing. Following *Tucker*, we vacated the sentence and remanded for resentencing.

What emerges from *Tucker, Leano*, and the requirements of section 2255 is a simple, straightforward procedure. If the sentencing record alone, or that record considered with other records properly brought to the district court's attention in connection with a section 2255 motion (such as a prior conviction record that does not show appearance of counsel or a valid affirmative waiver of counsel), presents a prima facie violation of *Tucker*, the sentence should be vacated and the defendant resentenced without consideration of the challenged prior conviction. If the prima facie showing is controverted, the cause must be set down for an evidentiary hearing. These two con-

5. *See Halliday v. United States* (1st Cir. 1967) 380 F.2d 270, 273: "In spite of some remarks in certain cases about the judge's personal recollections we cannot believe that, unless acquiesced in, they are part of the record in a § 2255 proceeding any more than they would be in any other." (Footnote omitted.)

clusions are mandated by *Tucker-Leano* and section 2255 respectively. A rule that re-sentencing be performed by a new judge is not required by either, but for the reasons later expressed, I would adopt the view of those circuits which impose that require-ment, unless some special circumstances ex-ist which would make the usual rule unrea-sonable or inappropriate.

The majority attempts to distinguish *Leano* and thus circumvent the standard and procedure we applied in that case to determine the existence of a *Tucker* viola-tion. *Leano*, however, is on all fours with *Wilson*. In both cases, the district judge issued a disclaimer of reliance on the priors, yet in both cases the record revealed that at sentencing he was treating the defendant as a second offender. (*See* note 1, *supra*.) The fact that the sentencing judge in *Leano* imposed only the minimum penalty for second offenders, while Wilson was given five years more than the minimum, hardly shows that the invalid priors did not influ-ence the sentence. On the record before us, Wilson is entitled to be resentenced, or at the very least, to an evidentiary hearing to determine his entitlement.

The decisions of our Circuit in *United States v. Eidum* (1973) 474 F.2d 581 and *Dukes v. United States* (1974) 492 F.2d 1187 are opaque, very brief opinions. The lan-guage of *Eidum*, repeated in *Dukes* and quoted by the majority in this case, is con-clusory, unsupported by any authority, or any reasoning. No effort whatever is made to square the conclusion with *Tucker*. Apart from these deficiencies, the *Eidum* opinion is not meaningful authority for any-thing because it does not describe the record at the original sentencing, if *Eidum* were interpreted to mean that the sentenc-ing judge's informal disclaimer could rebut the inferences from the original sentencing record, the decision would be contrary to *Tucker* and to the command of section 2255 that an evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." How-ever, if *Eidum* is interpreted to mean that a

judge's disclaimer can rebut a petitioner's allegations of *Tucker* error only when the allegations are wholly unsupported by the record of the sentencing proceedings, the *Eidum* result is correct and innocuous.

*Dukes* is almost as laconic as *Eidum*, but it appears to read *Eidum* in the latter sense because *Dukes* recognizes that section 2255 relief cannot be denied without an eviden-tiary hearing unless the record is "conclu-sively" against the petitioner. Even if a judge's informal disclaimer could be treated as if it were evidence, that "evidence," if in conflict with the inferences appropriately drawn from the record of the sentencing proceedings, would require an evidentiary hearing. Given *Dukes'* correct statement of section 2255 and its conclusion that no evi-dentiary hearing was required, the purport of *Dukes*, based on its reading of the *Dukes* sentencing proceeding and of *Eidum*, is that in *Dukes* as in *Eidum*, the petitioner's alle-gations found no support in the record and a judge's disclaimer is an adequate response to the unsupported averments of the peti-tioner. This reading of *Dukes* is buttressed by the hints that the per curiam opinion gives us about the underlying record. The claim that invalid prior convictions were relied upon appears to have been based solely on a FBI report, and the "FBI report [was] read to the court in such a way that it was, at least in part, unintelligible." (492 F.2d at 1188.)

## II. *Remedy for a Tucker Violation.*

The majority opinion suggests that a *Tucker* violation is cured without vacation of the original sentence, without resentenc-ing, and without any evidentiary hearing, if the sentencing judge "reconsiders" the sen-tence and disclaims his earlier reliance on the invalid prior convictions. Moreover, the sentencing judge's disclaimer of record ren-ders his decision not to resentence impervi-ous to effective appellate review if the dis-claimer has any "substantial basis in the record on its face to support the court's statement of non-reliance." (Majority Op'n at 133.)

This dictum is contrary to the Supreme Court's teaching in *Tucker*. The Supreme Court said:

"It [the Court of Appeals for the Ninth Circuit] went on, however, to find that there was 'a reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed.' Accordingly, the appellate court . . . remanded the case to the District Court for resentencing 'without consideration of any prior convictions which are invalid under *Gideon v. Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799].' " (404 U.S. at 445–46, 92 S.Ct. at 591.)

The Supreme Court affirmed our judgment remanding the case for resentencing.

As the Supreme Court's opinion and our own in *Tucker* make plain, the remedy for a *Tucker* violation is a vacation of the sentence and resentencing. Reconsideration by the sentencing judge even followed by a disclaimer of reliance will not do. Our interpretation of *Tucker* was explicit in *United States v. Wheeler:*

"Only recently the Supreme Court has ruled that any reliance upon an invalid prior conviction to enhance a criminal sentence is constitutionally impermissible and requires vacation of the latter and a remand to the District Court for resentencing without consideration of such invalid conviction"

(468 F.2d at 245; *accord, Leano v. United States, supra,* 494 F.2d 361; *see Murgia v. United States* (9th Cir. 1971) 448 F.2d 1275, 1276; *United States v. Atkins* (9th Cir. 1973) 480 F.2d 1223, 1224; *United States v. Weston* (9th Cir. 1971) 448 F.2d 626, 632–33; *cf. Verdugo v. United States* (9th Cir. 1968) 402 F.2d 599, 613; *Arketa v. Wilson* (9th Cir. 1967) 373 F.2d 582.)

The same interpretation of the *Tucker* remedy has been adopted in the First, Second, Third, and Seventh Circuits. (First Circuit, *see United States v. Picard* (1972) 464 F.2d 215, 219–20. Second Circuit, *United States ex rel. Lasky v. LaValle* (1973) 472 F.2d 960, 965; *see McGee v. United States* (1972) 462 F.2d 243, 245–46. Third Circuit, *see United States v. Janiec* (1972) 464 F.2d 126, 129, 132. Seventh Circuit, *United States v. Bishop* (1972) 457 F.2d 260, 263.)

The "reconsideration" envisioned by the majority opinion does not remotely resemble a fresh sentencing. None of the procedural protections required for sentencing is involved in the majority's design; rather, without mandating any kind of hearing, the majority accepts the recital of the sentencing judge in the post-conviction proceeding that he "did not rely on petitioner's previous record of convictions in determining the sentence imposed," and his statement that he relied on "the gravity of the six offenses petitioner was convicted of at the time," and on some "other information contained in the presentence report," the substance of which is not disclosed. In disclaiming any reliance, the sentencing judge understandably forgot part of the colloquy that he had had with counsel 8 years before. (*See* n. 1, *infra.*)

The reconsideration and disclaimer approach imposes a wholly unrealistic burden on the court because the sentencing judge is asked to remember his thoughts months and even years ago when he first imposed sentence. Then he is expected to undertake the intellectual gymnastics of trying to decide how he would have sentenced if he had known that he could not consider some of the information that he had earlier taken into account. Even if we could assume that judges, unlike other mortals, are capable of such feats of total recall and edited ex post facto judgment, the process is unfair and will be perceived as unfair. The defendant has no opportunity at all to explore these mental processes or to present any evidence that may reveal other factors that are pertinent to sentencing. Moreover, as other courts have recognized, judges are susceptible to that frailty of human-kind to stick to a judgment, once uttered, even when later shown that it was wrong. (*E. g., United States v. Rosner* (2nd Cir. 1973) 485 F.2d 1213, 1231; *see United States v. Tucker,*

*supra,* 404 U.S. at 452, 92 S.Ct. at 589 (Blackmun, J., dissenting).)

Both to avoid the potential futility of remanding this kind of case to the sentencing judge and to avoid the appearance of injustice, the First, Second, and Fifth Circuits ordinarily follow the practice of remanding the case for resentencing by a different judge. (First Circuit, *Mawson v. United States* (1972) 463 F.2d 29, 31; *United States v. Picard, supra,* 464 F.2d at 220; *United States v. Bishop* (1972) 469 F.2d 1337, 1348; *Halliday v. United States* (1967) 380 F.2d 270, 272–74. *But see O'Shea v. United States* (1974) 491 F.2d 774, 778–80. Second Circuit, *United States v. Schwarz* (1974) 500 F.2d 1350, 1352; *United States v. Rosner* (1973) 485 F.2d 1213, 1231; *United States v. Brown* (1972) 470 F.2d 285, 288–89. Fifth Circuit, *United States v. Vale* (1974) 496 F.2d 365, 367; *United States v. Ewing* (1973) 480 F.2d 1141, 1143. *See also Williams v. United States* (E.D.Pa.1974) 380 F.Supp. 503, 505.)

The critical importance of sentencing and the "lawlessness" with which it is conducted has been the subject of much deserved condemnation. (*E. g.,* Frankel, Criminal Sentences, Law Without Order (1973); A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences 1–2 (Approved Draft 1968); "Appellate Review of Sentences, A Symposium at the Judicial Conference of the United States Court of Appeals for the Second Circuit" (1962) 32 F.R.D. 249, 265 (remarks of Judge Sobeloff).) Adoption of the practice of the First, Second, and Fifth Circuits in requiring resentencing by a new judge when the former sentence was probably influenced by impermissible information by no means solves the pervasive problems of sentencing, but it is a salutary step in the right direction.

In addition to dissenting from the majority's disposition in this case, I cannot justify our court's refusal to hear it en banc. Without the distortion of Wilson's sentencing record, the conflict between the majority opinion and *Tucker, Wheeler* and *Leano* is starkly revealed. But even if I misread

*Tucker, Leano,* and the majority opinion in *Wilson,* and the record in all three, it should be evidence that these cases cannot be easily reconciled and thus remain to confuse district courts, litigants, and lawyers. We should also have eradicated *Eidum* and *Dukes,* which are almost unintelligible as authority for anything.

We cannot promise always to be right as individual judges or as a court, but we have an obligation as a court to harmonize our cases and to state the law of the circuit with sufficient clarity that persons of ordinary intelligence can follow it.

I would vacate the sentence and remand for resentencing.

Circuit Judges KOELSCH, BROWNING, DUNIWAY and ELY dissent from the court's denial at a rehearing en banc, and therefore concur in Circuit Judge HUFSTEDLER'S dissenting opinion.