559 P.2d 303

**Daniel George GOODRICK,
Plaintiff-Appellant,**

v.

**STATE of Idaho, Defendant-Respondent.**

**No. 11969.**

Supreme Court of Idaho.

Jan. 21, 1977.

Michael J. Verbillis, Coeur d'Alene, for plaintiff-appellant.

Wayne L. Kidwell, Atty. Gen., James F. Kile, Asst. Atty. Gen., Boise, Gary M. Haman, Sp. Asst. Atty. Gen., Coeur d'Alene, Gordon S. Nielson, Sr., Deputy Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for defendant-respondent.

McFADDEN, Chief Justice.

The facts of this case are reported at length in *State v. Goodrick,* 95 Idaho 773, 519 P.2d 958 (1974). In that decision, this court affirmed appellant's conviction for rape and kidnapping in the second degree. In brief, the facts relevant to this appeal are as follows: The rape took place in the back seat of appellant's mother's (Mrs. Goodrick) car on July 28, 1971. A sleeping bag, owned by the prosecutrix, was placed on the seat prior to and during the rape. Following the rape, the prosecutrix escaped and fled, apparently leaving her tennis shoes behind. Goodrick then drove the car to Spokane, Washington, where it was found parked in front of his aunt's home. Earlier that day Mrs. Goodrick had reported her car stolen. A Spokane County Deputy Sheriff spotted the car parked at the aunt's home, observed the tennis shoes and sleeping bag inside, and inventoried and took photographs of the car and its contents with the consent of the persons at the residence. The car was later returned to Mrs. Goodrick at her home in Post Falls, Idaho. She thereupon removed the shoes and bag from the car and took them into the house, leaving them just inside the front door.

After the car was returned to Post Falls, the Kootenai County Sheriff's office, which was conducting an investigation of the alleged kidnapping and rape in cooperation with the Spokane County Sheriff's office, conducted a three or four day surveillance of Mrs. Goodrick's home. On August 6, 1971, a Kootenai County deputy sheriff approached the house and knocked on the front door. When Mrs. Goodrick opened the door the officer observed the tennis shoes and sleeping bag and said, "this is what I want," or words to that effect. Mrs. Goodrick gave him the items and he took them into custody as evidence.

Seven days prior to the date of the rape, Goodrick had been released from the Idaho State Penitentiary. He then moved in with his mother and paid her $50.00 for one month's rent. He rented one bedroom and shared the rest of the house in common.

Goodrick never returned home after the incidents of July 28, 1971, having apparently hopped a freight train into Montana after abandoning his mother's car. Mrs. Goodrick testified that she figured her son wasn't living with her any more since he was gone and she didn't know where he was. Goodrick was arrested some two months following the incident and was subsequently found guilty. He then filed a petition for post conviction relief which was denied. He now appeals that decision.

During the trial, the tennis shoes and sleeping bag were admitted into evidence pursuant to a stipulation between the prosecuting attorney and Goodrick's court appointed attorney (Goodrick is represented by different counsel in this post conviction proceeding). Goodrick's trial attorney did not file a motion to suppress this evidence. It is the failure to file this motion which constitutes the first of two grounds which form the basis for Goodrick's claim that he was denied adequate assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution.

Goodrick's attorney testified in the court below that he chose not to move to suppress these items of evidence because he believed they would be admissible in that Goodrick did not have standing to question the constitutionality of the search and seizure. He further testified that he believed that in any event the items were turned over voluntarily by Mrs. Goodrick, whom he stated was in possession of the items at that time. This attorney based his decisions on his understanding of the applicable law.

If a decision not to move to suppress is due to the attorney's ignorance of the underlying law, it is conceivable that such a decision would constitute a denial of competent counsel. See State v. Tucker, 97 Idaho 4, 539 P.2d 556 (1975). The relevant question is, therefore, whether there was such a misinterpretation by this attorney as to the admissibility of such evidence as to constitute denial of competent counsel.

Goodrick's attorney, after consideration of the circumstances surrounding the seizure of the bag and shoes, and after a discussion with Mrs. Goodrick, determined that the seizure would be found to have been constitutionally valid and that filing a motion to suppress this evidence would prove to be fruitless. The court below faced these issues and, in its memorandum opinion, confirmed his reasoning.

The district court, citing State v. Pontier, 95 Idaho 707, 518 P.2d 969 (1974), stated that the automobile, while parked in Spokane, "was in plain view in the driveway and therefore the officers had a right to examine it and to look into the windows." The court went on to state that the seizure of the bag and shoes was valid in that Mrs. Goodrick "voluntarily and knowingly admitted the officers into an area of the house where she had the right to do so and where petitioner did not have any right of expectation of sole and personal privacy." The court then concluded that "objects falling in the plain view of an officer who has a right and a duty to be in the position to have that view are subject to seizure and may be introduced into evidence."

This court finds that the district court did not err in its determination that the attorney's decision to not file a motion to suppress did not constitute a denial of competent counsel.

Turning to appellant's second ground for claiming he was denied competent assistance of counsel, at the trial appellant took the witness stand in his own defense. His attorney elicited from him testimony that he had previously been convicted of a felony, that it was a forgery conviction, that he had been incarcerated in the State Penitentiary, and that he had been released only seven days prior to the date of the rape. Appellant claims that this last revelation was clearly prejudicial in the eyes of the jury and that his attorney should not have asked the question. He contends that this information could have been kept from the jury (see State v. Shepherd, 94 Idaho 227, 486 P.2d 82 (1971), and thus this action constituted a denial of competent counsel.

This court has previously held that it does not sit to question an attorney's

reasoning and second guess his decisions. See, *State v. Tucker, supra.* A strategical decision, such as a decision to enhance a defendant's credibility by making him appear to be an open and honest witness, cannot form the basis of an incompetent counsel claim. Here, the defendant's counsel apparently decided to inform the jury of the defendant's prior criminal record prior to any attempt by the prosecutor to bring that information out. This is the type of strategical decision which, under the above cited rule, will not be found on appeal to be the basis of an incompetent counsel charge.

Appellant also assigns as error on appeal the failure of the trial judge to disqualify himself. I.C. § 1–1801(4) states,

"*Cases In Which Judge Disqualified.*—A judge cannot act as such in any of the following cases:

\*　　\*　　\*　　\*　　\*　　\*

4. When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge. Such affidavit may be made by any party to an action, motion or proceeding, personally, or by his attorney or agent, and shall be filed with the clerk of the district court in which the same may be pending at least five (5) days before the day appointed *or* fixed for the hearing or trial of any such action, motion, or proceeding, (providing such party shall have had notice of the hearing of such action, motion, or proceeding for at least the period of five (5) days, and in case he shall not have had notice for such length of time, he shall file such affidavit immediately upon receiving such notice). Provided further that no such affidavit may be filed in any case after any contested matter in relation to such litigation has been submitted for decision to any judge sought to be disqualified, excepting that where a new trial is granted or ordered by either the district court or the Supreme Court, such affidavit may be filed as in the first instance. \*　\*　\*." (Sec-

tion 1–1801 was repealed in 1975 and supplanted by I.R.C.P. 40(d).)

The initial request to disqualify was in this case made by the appellant acting *pro se*. On June 6, 1974, he mailed a letter to the district judge asking that he disqualify himself. I.C. § 1–1801(4) requires such a request to be made in affidavit form and a letter which is not in affidavit form does not suffice.

Subsequent to this, on October 11, 1974, the appellant's counsel filed a second request for disqualification which was in proper affidavit form. However, on June 14, 1974, the state had filed a motion to dismiss Goodrick's petition and amended petitions for post-conviction relief or, in the alternative, for summary judgment. In response to this motion, on June 24, 1974, Goodrick had filed a motion for an evidentiary hearing regarding the issues presented by his petition for post-conviction relief. Within his motion and memorandum in support of his motion Goodrick argued the merits of his request. On July 19, 1974, the district court denied without prejudice the state's motion to dismiss or for summary judgment. A contested matter having thus been submitted to the court prior to the filing of the affidavit of prejudice, the district judge properly refused to disqualify himself. I.C. § 1–1801(4).

Order denying post-conviction relief affirmed.

DONALDSON, SHEPARD and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

My concern is with appellant's Assignment of Error where he, in essence, challenges the jurisdiction of the particular trial judge. I am in disagreement with the determination of this issue as reached by the majority opinion, and I believe it should be specifically noted that the trial court did accept the appellant's June 6, 1974, letter as a motion, and accordingly did enter an *order* denying it. It is true that the appellant, attempting to be his own attorney, did not make his disqualification attempt in

affidavit form, as required by the statute then in effect. I.C. § 1–1801(4). Shortly thereafter, the statute was apparently observed to be unnecessarily stringent and has been rewritten so as to require only that a notice of disqualification be made. Rule 40(d), I.R.C.P.

Appellant's letter contained but two sentences, one requesting the trial judge to disqualify himself, and a second stating his belief that it would be "of a prejudicial matter if you were to remain on the bench in this case." I would hold that such a letter from a party appearing *pro se* constitutes substantial compliance with the former statute and it is the present rule.

The trial court was apparently of the same opinion. He was clearly treating the letter as a notice of disqualification when he denied the request in this language:

> "Contested motions having been submitted prior to receipt of this request, your request is not timely and is therefore denied."

The trial court did not deny the motion on the basis that it was not in affidavit form. Had he taken this view, he would have so advised the appellant, and appellant could have then sworn to the letter before a notary. On appeal this Court should review the reasoning of the trial court in denying the motion.

The record does not show any contested motions. Appellant, in initiating the instant proceedings, being then without benefit of counsel, made a motion to proceed in *propria persona,* dated April 1, 1974. Under date of 11 April 1974, the State of Idaho moved for an order enlarging its time in which to answer or respond after it received certain documents, the preparation of which was also moved for. This motion was accompanied with a notice that it would be called on for hearing May 3, 1974, at the Kootenai County courtroom in Coeur d'Alene.

Appellant responded with a motion which had for its purpose only to insure to him his claimed right to be present at such court proceedings noticed up for May 3. Appellant filed an amended petition on April 15, 1974.

No motions were argued on May 3, the trial judge having entered an order on the 19th of April, 1974, enlarging the time as requested by the State.

These proceedings did not constitute the submission of a contested matter to the trial judge. Neither party had raised any objection to the other party's motions, there was no argument on the motions, and the order entered was in essence an *ex parte* order, and properly made under the then state of the record.

It seems clear to me the trial court here, in a commendable exercise of judicial discretion, considering the circumstances attendant to appellant's attempt to make a disqualification, i. e., a lay person with the additional handicap of being in confinement, properly considered the letter sufficient, but erroneously concluded that there was any contest being waged in the motions which were in the file, and which were not to be argued until 14 days later.

Moreover, I am influenced by the language in *Farrow v. U. S.,* 1976, —— F.2d ——, apparently pending on rehearing in the Ninth Circuit, wherein Judge Koelsch, in a situation which is somewhat similar to this, stated:

> "There are a number of reasons for this requirement which derive from the fundamental precept that judges, like the convicts they sentence, are human beings. For example, when the sentencing judge rules on the § 2255 claim or resentences the petitioner, it may be difficult, if not impossible, to ascertain the extent to which his untested recollection of the original sentencing proceeding may subconsciously or otherwise influence his new determination. Moreover, when a judge has undergone the unsettling process of assessing the punishment of another, it seems entirely plausible that he might attach some emotional commitment to the 'correctness' of his initial determination. This natural human tendency to reduce the dissonance created in choosing one of several alternatives by

thereafter persuading oneself that the chosen alternative is the correct one has been recognized and measured by psychologists. In addition, the possibility exists that the reimposition of the same sentence—supposedly without consideration of the priors—may in some circumstances be a veiled punishment for challenging the original sentence. *Cf. North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The mere existence of possibilities such as these subtly dissipates the appearance of fairness of the § 2255 or resentencing proceeding, and the requirement of a different judge, in our view, does much to restore that appearance." (Footnotes omitted.) *Id.* at ———.

I would reverse and remand for proceedings before a different trial judge.