577 P.2d 343

**Application of Marilyn Janet Mitchell for a writ of habeas corpus.**

**Marilyn Janet MITCHELL,**
**Petitioner-Appellant,**

v.

**Lois Anne PINCOCK,**
**Defendant-Respondent.**

**No. 12327.**

Supreme Court of Idaho.

March 1, 1978.

Rehearing Denied May 1, 1978.

Deborah A. Bail of Idaho Legal Aid Services, Inc., Boise, for petitioner-appellant.

Phillip M. Barber and Karl Jeppesen of Elam, Burke, Jeppesen, Evans & Boyd, Ellison M. Matthews of Matthews, Lee & Wilson, Boise, for defendant-respondent.

DONALDSON, Justice.

Marilyn Mitchell (petitioner-appellant), an unmarried woman, gave birth to Christopher Mitchell on November 30, 1971 in La Mesa, California. Unsure if she wanted the baby, she signed a release allowing Lois Pincock (defendant-respondent) and her husband to take Christopher home from the hospital. About three months later, the Pincocks wanted to adopt Christopher, but Mitchell refused her consent. She demanded the baby be returned and the Pincocks instituted guardianship proceedings in California Superior Court. Legal proceedings have been continuous ever since.

The Superior Court of California initially granted the guardianship petition of the Pincocks on August 11, 1972. Mitchell appealed this order to the California Court of Appeals who reversed the lower court order. Basically, the appellate court held

that California law requires a finding of detriment to the child to overcome a presumption in favor of a natural parent for guardianship purposes. Also the court found the evidence received by the trial court could not legally comprise a finding of detriment to the child.

On remand, the same judge in Superior Court held another trial and on November 30, 1973, again awarded guardianship to Lois Pincock on February 22, 1974.[1]

This decision was also appealed to the California Court of Appeals. Again the court reversed, holding the trial court had not shown the detriment required to deprive a natural parent of custody. On February 20, 1975 the Court of Appeals ordered the trial court to deny the Pincock petition and ordered the child delivered to Marilyn Mitchell.

A few weeks before the decision was handed down by the Court of Appeals, Lois Pincock moved herself, her children, and Christopher Mitchell to Eagle, Idaho.

Pincock attempted to appeal the reversal to the California Supreme Court, but the appeal was denied on April 24, 1975. Pursuant to the order of the California Court of Appeals, the guardianship was terminated on June 16, 1975. A copy of this order of termination was personally served upon Pincock by the Ada County Sheriff.

Pincock refused to return the child. The California Superior Court ordered her to show cause why she should not be held in contempt for failing to return the child. On September 11, 1975, Pincock was found in contempt by the California Superior Court and a warrant for her arrest was issued.

Marilyn Mitchell, the mother of the child, filed a petition for a Writ of Habeas Corpus on September 29, 1975 in Fourth District Court in Ada County, Idaho. Several hearing were held in the Magistrates Division of the District Court. The magistrate concluded that Mitchell appeared to be an adequate mother, that Pincock had not shown

her unfit and that the decision of the California courts should be given full faith and credit and comity. Further he found that the California courts had full jurisdiction of the parties and subject matter and that the case was fully litigated with counsel. The Writ of Habeas Corpus issued and the child was ordered to be returned to his mother. However, it was ordered that the child be placed with the Idaho Department of Health and Welfare pending appeal.

Pincock appealed to the district court and a trial *de novo* was held. The district judge found that Lois Pincock could provide a better environment for Christopher Mitchell to be raised in and that it would be detrimental to him to be returned to his mother. The Writ of Habeas Corpus ordered by the magistrate was quashed and the child was returned to Lois Pincock.

Mitchell appeals to this Court, raising important full faith and credit and comity issues.

 The full faith and credit clause of the United States Constitution requires that valid sister state judgments be accorded full effect. U.S.Const. art. 4, § 1. The purpose of the full faith and credit clause is to integrate and unify the nation by according finality to a prior final judgment issued by another state or federal court. *Porter v. Wilson*, 419 F.2d 254 (9th Cir. 1969), *cert. denied*, 397 U.S. 1020, 90 S.Ct. 1260, 25 L.Ed.2d 531 (1970); *see* Nadelmann, "Full Faith and Credit to Judgments and Public Acts; A Historical-Analytical Reappraisal," 56 Mich.L.Rev. 33 (1957). This purpose has been effectuated by Congress in 28 U.S.C. § 1738 (1971). Principles of res judicata are given to the final judgment of a sister state. *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177 (3rd Cir. 1972).

It is clear that Lois Pincock's legal relationship to Christopher has been exhaustively litigated in California. Two trials were held and two decisions resulted. The California Court of Appeals twice reviewed

---

1. The Pincocks received an interlocutory divorce decree July 23, 1973, and Dr. Pincock did not continue as a party. The divorce was final December 28, 1973.

the case and the California Supreme Court declined to review it. As of June 16, 1975 Lois Pincock has no legal right to Christopher Mitchell.

Pincock does not attack the California judgment, rather she contends the California "custody decree, being modifiable, lacks the requisite finality of most judgments." Therefore, the circumstances have changed because the child is older now and in Idaho, so custody can be relitigated here.

This argument ignores both the facts of the case and the import of full faith and credit. The California litigation resulted in a final determination on guardianship, not on custody. Lois Pincock has had possession of the child almost continually since December 1971. This possession was legal only for two periods after California Superior Court orders granting letters of guardianship and before those orders were reversed on appeal. Since June 16, 1975, Pincock has been in possession of the child in direct violation of California law.

Further, Lois Pincock was before the California courts for all of the proceedings. She fully litigated the issue in California, to the point of appealing to the California Supreme Court while she was in Idaho. Having conclusively lost guardianship in California, Pincock seeks to have guardianship awarded by Idaho courts. We decline to do so.

■ Quarrels over possession or custody of minor children often raise violent emotions which must be controlled by an equitable and orderly legal process. Full faith and credit ensures this equity. A final judgment has been entered in California, conclusively denying guardianship to Lois Pincock and returning the child to the parent and natural guardian, Mitchell. This judgment must be given effect in Idaho. The seemingly endless litigation must be stopped.

While it is true that we have held that full faith and credit in custody disputes may be limited in certain situations; *Ex parte Derr*, 70 Idaho 527, 224 P.2d 306 (1950); this is not one of those situations.

In that case this Court sustained a trial court's judgment modifying an Oregon custody award between parents. Several points make the rationale of that case not inconsistent with our holding here. In *Derr* we noted that both parties consented to the custody trial in Idaho. Further, it was noted: "Carolyn Ann Derr was not brought to the State of Idaho by stealth or fraud or in violation of the terms of the Oregon decree. She was brought to Idaho with the knowledge and consent of appellant." *Id.* at 530, 224 P.2d at 308. In addition, *Derr* was a custody dispute between parents, each equally entitled to custody.

The present case involves an attempted guardianship of a non-relative in derogation of the rights of the natural mother. The child was brought to Idaho in violation of California law, Cal.Prob.Code § 1500 (Deering), and has been kept here in violation of a valid California judgment and in contempt of the California Superior Court. The mother at no time consented to the removal of the child to Idaho.

California courts had full jurisdiction over this dispute. To allow Idaho to exercise jurisdiction in this case would encourage the very undesirable conduct that full faith and credit was meant to eliminate. *Sutton v. Leib*, 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448 (1952). In the words of the magistrate below;

> Any deviation from this established doctrine could and would have serious legal and policy implications in this area of the law, making Idaho a potential haven for parties dissatisfied with custody determinations and wishing simply to relitigate the same matters again in a different tribunal.

Many other states have recognized this problem. In *Matter of Marriage of Forsyth*, 14 Wash.App. 909, 546 P.2d 117 (1976), it was held proper under the "clean hands" doctrine to decline to accept jurisdiction in a custodial dispute where the child was brought to Washington in violation of a valid California order. *Accord: Perrenoud v. Perrenoud*, 206 Kan. 559, 480 P.2d 749 (1971); *Fahrenbruch v. People*, 169 Colo. 70,

453 P.2d 601 (1969); *Clampitt v. Johnson*, 359 P.2d 588 (Okl.1961); *Ex parte Wenman*, 33 Cal.App. 592, 165 P. 1024 (1917).

The Idaho legislature also has recognized this problem by passing the Uniform Child Custody Act. I.C. § 5–1001 et seq. Although this law was passed well after this suit began, the concern of the legislature in preventing the instant situation is clear.[2]

Although most of the case law in this area involves custody disputes between parents, the logic of granting full faith and credit and comity to the California decree is even more compelling given this is a dispute by someone unrelated to the child in question.

In this case there is the exacerbating factor of the expense of litigation. Mitchell fully litigated all the aspects of guardianship in California, as did Pincock. Expert witnesses, doctors and psychiatrists, as well as character witnesses were heard. Mitchell should not be penalized because she cannot afford to transport a bevy of witnesses to wherever Pincock attempts to gain guardianship of the child.

■ Mitchell instituted the present action as a petition for a Writ of Habeas Corpus. Habeas Corpus is the proper form, as Pincock was holding the child in violation of Mitchell's rights. I.C. § 19–4201 et seq.

The order quashing the Writ of Habeas Corpus and all subsequent orders including any order of guardianship of District Judge Smith are reversed and the Writ of Habeas Corpus ordered by Judge Schwartzman is reinstated, effective immediately. Upon receipt of this opinion, Judge Schwartzman is authorized and directed to require the Sheriff of Ada County to deliver the child to his courtroom for appropriate proceedings in accordance with the opinion of this Court.

SHEPARD, C. J., McFADDEN, J., and SCOGGIN, District Judge, retired, concur.

BISTLINE, Justice, concurring.

A final judgment was entered in California conclusively denying guardianship to Lois Pincock and directing the return of the child to the parent and natural guardian, Mitchell. In proceedings in the Idaho courts, Pincock does not attack the California judgment, contending instead that the California "custody decree being modifiable lacks the requisite finality of most judgments." Claiming a change of circumstances since the entry of the California decree, Pincock claims the right to relitigate the custody issue in Idaho. At oral argument, however, Pincock conceded that the California judgment was not modifiable in the very action in which it had been entered. Respondent herself thus recognizes the dis-

2. I.C. § 5–1001. Purposes of act—Construction of provisions.—(a) The general purposes of this chapter are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning this care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(7) Facilitate the enforcement of custody decrees of other states;

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) Make uniform the law of those states which enact it.

(b) This shall be construed to promote the general purposes stated in this section.

tinction between a custody decree entered as a usual incident to a divorce action, between the two parents on the one hand, and, on the other, a contest between a parent and a stranger.

The full faith and credit clause of the United States Constitution requires that California's final judgment be accorded full effect upon principles of *res judicata* and collateral estoppel. This is essentially the holding of the Court's opinion and I concur. However, I do not see the necessity for any discussion of the "clean hands" doctrine, or the Uniform Child Custody Act—both of which propositions have to do only with modification controversies.

Observing that a relationship of over 6 years' duration is coming to an end, I think it appropriate to suggest to Judge Schwartzman that he discuss with the litigants the possibility of some voluntary arrangement whereby Pincock would not be deprived of all future contact with the child.