629 P.2d 127

**Lillian A. OVERMAN,
Plaintiff-Appellant,**

v.

**Steven G. OVERMAN,
Defendant-Respondent.**

No. 13337.

Supreme Court of Idaho.

Dec. 22, 1980.

Dissenting Opinion Jan. 29, 1981.

**236**

Ismael Chavez, Caldwell, for plaintiff-appellant.

Gary H. Lew, Caldwell, for defendant-respondent.

BAKES, Justice.

Plaintiff appellant Lillian Overman obtained a default judgment of divorce from defendant respondent Steven Overman in January, 1978, in the district court of the Third Judicial District. The divorce decree awarded appellant Lillian Overman custody of the couple's five minor children, ordered respondent Steven Overman to pay $75 per month per child in child support, and divided the couple's property.

On September 26, 1978, respondent Steven Overman moved for modification of the divorce decree to enable him to obtain permanent custody of the couple's children. Respondent sought immediate temporary custody of the five children and a hearing on his motion to modify the divorce decree to grant him permanent custody.

In support of his motion, respondent submitted an affidavit of a social worker employed by the Idaho Department of Health & Welfare. The affidavit was based on the files of the department and alleged that the department had received numerous reports and complaints indicating that appellant was improperly caring for the couple's children. Among the allegations made by affiant, based upon the department's files, were that the two school age children were not regularly attending school; the children were often left without proper supervision; the children were in need of clothing and shoes; the appellant mother had attempted to place the children in a foster home; and that the affiant feared that the appellant mother would soon be leaving the state with the children.

On September 26, 1978, prior to notice to appellant of the proceedings and without a hearing, the district court granted the respondent father immediate temporary custody of the children pending a plenary hearing on respondent's motion for modification of the divorce decree. The district court's temporary order stated that it was entered to enable the court to maintain jurisdiction over the children until a hearing could be held. Hearing on the respondent father's motion was set for October 6, 1978, ten days after entry of the court's *ex parte* order granting respondent temporary custody of the children.

On October 6, 1978, both parents stipulated to a continuance of the matter until November 2, 1978, and agreed that the district court's order granting the respondent father temporary custody of the children should remain in effect until a full hearing in the matter could be held. On October 31, 1978, the district court granted the appellant mother's attorney leave to withdraw

from the case on the grounds that appellant had not heeded his advice and had failed to maintain her financial commitments to him. This order extended the effect of the September 26, 1978, order until a hearing on respondent's motion for modification could be held. The November 2, 1978, hearing was vacated and reset for December 8, 1978. On December 8, 1978, the appellant mother again moved for a continuance to allow her new attorney to prepare. The plenary hearing was finally held on February 20, 1979, with both parents present and represented by counsel. Testimony by several witnesses was heard and, by agreement of the parties, the court visited with each child in chambers.

Following the plenary hearing, the district court entered an order modifying the parties' decree of divorce to grant the respondent father permanent care, custody and control of the parties' five children. The district court concluded that appellant had neglected the needs of the children and that the best interests of the children would be served by modifying the original decree to grant the children's father permanent custody of the children subject to visitation rights of the mother. In its findings of fact made following the hearing, the court noted that while in their mother's custody the two school age children's school attendance had been extremely sporadic and that, despite several conferences between the mother and school authorities on the problem, the children's attendance did not improve. Neither child was promoted with her class at the end of the 1977–78 school year. Both children had continued to miss substantial amounts of school time when 1978–79 school year commenced until custody was obtained by their father on September 26, 1978. The court found that while in their father's custody the children had regularly attended school and had received assistance with their school work at home. The court found, as a result of its interviews with the children, that the children understood the

nature of the court proceeding and that they expressed satisfaction with the home environment created by their natural father and new stepmother. As a result of the evidence received at the hearing and the visits with the children, the district court granted permanent custody of the children to the respondent father and granted the appellant mother specified visitation rights.

Appellant on appeal challenges the propriety of the district court's entry on September 26, 1978, of an *ex parte* order granting respondent temporary custody of the children pending a hearing on respondent's motion for modification of the divorce decree's child custody provisions. Appellant contends that consideration of the Department of Health & Welfare's affidavit and entry of the *ex parte* order deprived her of her right to custody of the children, granted by the divorce decree, without due process of law. She also argues that the district court's procedure was in violation of I.R. C.P. 6(c)(3) which requires that the court *shall* hear the testimony of interested parties in proceedings to modify child custody provisions of a divorce decree unless the parties have stipulated to modification of the decree.

 The question presented by this appeal is a narrow one, *i. e.*, whether the district court, on the non-custodial parent's motion to modify the child custody decree, erred in entering an order granting temporary custody of the minor children to the non-custodial parent upon a properly supported *ex parte* motion pending a full hearing, to be held within ten days. It is our opinion that I.C. § 32–705[1] and I.R.C.P. 65(g), read together, permit the district court to enter an *ex parte* order granting temporary custody to a non-custodial parent if the record before him indicates that such an order was necessary in the case, would be in the best interests of the children, and is followed within ten days by a full hearing on the merits of the non-custo-

---

1. Subsequent to the district court's decision in this case, the legislature recodified and substantially amended I.C. § 32–705. 1980 Idaho Sess.Laws ch. 378, § 3. The amended statute is now found at I.C. § 32–717. Former I.C. § 32–705, however, controls the disposition of this case. I.C. § 73–101.

dial parent's motion. We further hold that if adequate justification for an *ex parte* order temporarily transferring custody to a non-custodial parent is shown and if a full hearing on the question of which parent should maintain custody pending a motion to modify a custody decree is provided within ten days, no due process violation appears.[2]

■ Due process is not a fixed concept requiring a specific procedural course in every situation. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Determination of the specific dictates of due process requires comparing the private interest which will be affected and the probable value of additional or alternative procedural safeguards with the risk of erroneous deprivation of the private interest through the procedures actually used and the governmental interest in the procedural safeguards utilized. *E. g., Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Although central to procedural due process is the right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner, *see e. g., Goldberg v. Kelly, supra*, prehearing judicial intervention in a matter is not *per se* violative of state or federal due process requirements. For example, seizure of a debtor's property without notice to the debtor or opportunity for a preseizure hearing, upon application to a judicial officer by a creditor and submission of an affidavit setting out facts entitling the creditor to sequestration when state law provided for an immediate post seizure hearing, has been approved by the Supreme Court of the United States. *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *see also Mathews v. Eldridge, supra* (non-need based social welfare benefits may be terminated

prior to hearing when recipient has opportunity for a post termination hearing on his or her right to receive benefits).

■ Questions regarding custody of minor children are directed in the first instance to the discretion of the trial court and unless such discretion is abused the court's judgment in respect to custody will not be disturbed on appeal. *Blakely v. Blakely*, 100 Idaho 107, 594 P.2d 145 (1979); *Koester v. Koester*, 99 Idaho 654, 586 P.2d 1370 (1978); *Strain v. Strain*, 95 Idaho 904, 523 P.2d 36 (1974); *Tomlinson v. Tomlinson*, 93 Idaho 42, 454 P.2d 756 (1969). Where the district court exercises its discretion to award temporary custody to a non-custodial parent pending an immediate plenary hearing on a motion for modification of a child custody decree, our appellate review will be limited to determining whether the district court abused its discretion in entering the *ex parte* temporary order.

■ Provisions of a court order governing child custody are not final judgments and are not *res judicata* as to the issues determined. The district court maintains continuing jurisdiction to modify custody provisions whenever required by changed circumstances to insure the best interests and welfare of the children. *E. g., Prescott v. Prescott*, 97 Idaho 257, 542 P.2d 1176 (1975); *Dey v. Cunningham*, 93 Idaho 684, 471 P.2d 71 (1970). I.C. § 32–705 provides that:

> "32–705. CUSTODY OF CHILDREN.—In an action for divorce the court may, before or after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same."

I.R.C.P. 65(g) provides that

> "[i]n suits for divorce, annulment, alimony, separate maintenance or custody of children, the court may make prohibitive or mandatory orders, with or without notice or bond as may be just."

---

**2.** It must be kept in mind that the *ex parte* order in this case granted temporary custody of the children to their natural father who, in the

January, 1978, decree of divorce, was awarded "the right of visitation with the said children at all normal and reasonable times and places."

■ Our examination of the record indicates that the district court did not abuse its discretion in awarding, on the basis of the respondent father's motion and the affidavit submitted in support thereof, temporary custody of the parties' five minor children to the respondent father pending a full hearing of the matter in ten days. Although an *ex parte* order may properly be entered only under compelling circumstances, the affidavit submitted to the district court in support of respondent's motion for temporary custody supports the district court's decision to enter the temporary custody order prior to the hearing. The affidavit alleged that there was a possibility that the appellant mother would leave the jurisdiction of the Idaho courts if she were allowed to retain custody of the five children. Faced with the possibility that the appellant mother would remove the children from the state, the court's decision to award temporary custody to the children's father for a period not to exceed ten days did not impose a burden upon the mother's interests sufficient to constitute a due process violation of constitutional dimensions. *See, e. g., Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In view of the district court's plenary authority over child custody matters embodied in I.C. § 32–705, the authority of the district court under I.R.C.P. 65(g) to enter orders in child custody disputes without notice if required by the circumstances of the case, and the fact that the *ex parte* order merely shifted custody of the children from one natural parent to the other for a period not to exceed ten days, we cannot say that the district court abused its discretion in awarding temporary custody of the children to the respondent father. The district court's

*ex parte* order contemplated a full hearing in the matter within ten days. The appellant mother had the right under I.R.C.P. 65(b)[3] to obtain a full hearing on the propriety of the temporary *ex parte* order on two days' notice to respondent or on such shorter notice as the court may have prescribed. The fact that the temporary *ex parte* order did remain in effect from September 26, 1978, to February 20, 1979, was a result of a stipulation entered by the parties on October 6, 1978, and motions for continuance made by the appellant wife on November 2, 1978, and December 8, 1978.

Appellant argues that I.R.C.P. 6(c)(3)[4] prohibits modification of a decree of divorce as to the custody of children absent testimony of the interested parties unless the parties have stipulated to modification of the decree. I.R.C.P. 6(c)(3), however, governs the procedure to be followed in the plenary hearing on a modification of the child custody provisions of a divorce decree. I.R.C.P. 65(g) specifically provides that the court may preliminarily enter *ex parte* orders in child custody matters if necessary to assure just resolution of a dispute. Read in conjunction with I.R.C.P. 65(g), I.R.C.P. 6(c)(3) does not preclude the manner of disposition utilized by the district court below.

■ The appellant mother also contends that the district court erred in modifying the child custody decree to award permanent custody to respondent. However, the district court's findings of fact entered following the plenary hearing, at which both parties were present and represented by counsel, on February 20, 1979, support the district court's decision to modify the decree and grant the respondent father permanent

---

3. "RULE 65(b). TEMPORARY RESTRAINING ORDER—NOTICE—HEARING—DURATION. —... On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require."

4. "RULE 6(c)(3). SHOW CAUSE HEARINGS IN DIVORCE AND CUSTODY PROCEEDINGS.—... In proceedings for the modification of a decree of divorce as to the custody of children, the court shall hear the testimony of the interested parties unless the parties have stipulated to the modification of the decree and the court finds good cause therefor and that it is to the best interest of the child or children to determine the proceeding upon affidavits and the file of the action without hearing testimony and evidence in open court."

custody of the children subject to appellant wife's reasonable visitation rights.[5] The findings specify that the two older children, while in their mother's custody, were absent from school a substantial amount of time. The findings reflect that despite several parent-teacher conferences with appellant wife the children's school attendance did not improve. Their attendance was sporadic enough to preclude the children from making normal advancement with their classmates. The court found that respondent husband had remarried since the parties' divorce and was able to provide the children with a home environment which would foster regular school attendance and improved educational achievement.

The record on appeal supports the conclusion that a material, permanent and substantial change of circumstances had occurred following the default divorce decree awarding custody to the appellant such that the best interests of the children would be served by granting respondent permanent custody of the children. *See, e. g., Poesy v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977). The appellant wife makes no contentions that the district court's findings of fact were not supported by evidence produced at the hearing on respondent's motion to modify the divorce decree. The district court's decision to modify the divorce decree to award the respondent father permanent custody of his five minor children and to grant the appellant wife reasonable visitation rights is affirmed.

Affirmed. Costs to respondent.

DONALDSON, C. J., and SHEPARD and McFADDEN, JJ., concur.

5. Although respondent contends that the district court's decision following the plenary hearing makes moot appellant's arguments concerning the prehearing temporary custody order, the fact is that such an argument will nearly always be present in cases where a short term *ex parte* order is followed by a plenary hearing. Hence, we have addressed the merits of appellant's due process contentions.

1. I am not unaware that matters pertaining to custody are not entirely final, that is, in the

BISTLINE, Justice, dissenting.

Judge McClintick originally heard the evidence on the entry of the divorce decree which awarded the five children to Mrs. Overman, and was the logical judge to hear the request for modification. Accordingly, I would think that unless he happened to be unavailable, counsel for Overman logically would have made his *ex parte* presentation to Judge McClintick, and that Judge Lodge would have suggested that course of action. I do not comprehend how Judge Lodge allowed himself to be persuaded to issue an *ex parte* order which had the effect of overriding a final decree of divorce,[1] but, in that regard, because it was *ex parte*, we have no way of knowing what counsel urged upon Judge Lodge in securing the order. Most obviously, it must have been extremely persuasive, for, it is certain, the moving affidavit falls way short of sufficing as the predicate upon which to modify, even temporarily, a final decree, and one which we would expect would be accorded full faith and credit in our neighboring states.

As appears from the record, counsel for Mr. Overman simply armed himself with the almost totally conclusory and hearsay-ridden affidavit of a state employee, entered the court's chambers, and departed with an order changing custody. That Judge Lodge himself had some misgivings is reflected in the changes in the order which he himself made. But, be that as it may, I believe that those who study this case will, like myself, be less critical of the trial judge's rather precipitate and unprecedented actions than of the decision of this Court on appeal. In a given day, especially at trial, or on law day, trial judges are called upon to make a multitude of quick

sense that they are subject to modification upon allegation and proof of change of circumstances. Nonetheless, a decree awarding custody does have many of the usual aspects of finality—one being that it will sustain a habeas corpus proceeding in another state, another being that it will operate as a plea in bar, and, as I say, that it is completely definitive of the custodial rights of the parents until modified in accordance with well and long established statutory provisions and decisions of this Court.

but important decisions. On the other hand, the members of this Court, in the repose of their secluded offices, are not so pressed for time, have the input of counsel for both parties, and the collegial advice and experience of four other justices, not to mention the help of law clerks representing some of the finest new talent in the profession. As Judge Kilkenny observed in *Roberts v. Hollandsworth*, 582 F.2d 496, 500 (9th Cir. 1978), "[w]e at the appeal level, in our somewhat cloistered atmosphere, have a substantially better opportunity to study and analyze a problem such as here presented."

Today the Court announces an opinion which subverts Due Process to the euphemistical "Best Interests of the Child"—with which I cannot agree. Only two years ago the Court recognized, in *Mitchell v. Pincock*, 99 Idaho 56, 577 P.2d 343 (1978), that the courts of this state are required to and will extend full faith and credit to the decisions of other states, regardless of local opinions as to whether doing so is in the "Best Interests of the Child." And only a year ago this Court, in *Anderson v. Crapo*, 99 Idaho 805, 589 P.2d 957 (1978), upheld a trial court determination voiding an adoption decree, primarily for lack of due process—notwithstanding that two members of the Court came out strongly on the "Best Interests of the Child." While it is desirable that trial courts be affirmed when they can and should be affirmed, nevertheless an appellate court should be extremely cautious where it is claimed that a trial court has gone outside the bounds of Due Process. Here it is the Court on appeal which goes way too far in affirming the trial court, simply, in my humble opinion, using the case as a vehicle in which to propel and expound upon the virtues of the "Best Interests of the Child"—at the expense of Due Process.

The Court's opinion has two unacceptable flaws: (1) the Court misapplies the facts of this case to the rule it has now adopted, and (2) the Court approves of the actions of the trial judge who—although he has shown his own awareness of being, or giving the appearance of being, prejudiced by issuing the *ex parte* order changing custody—proceeded to the full hearing and thereupon decided the merits of the case which he had already been placed in the position of prejudging.

## I.

### A.

The district court's issuance of the *ex parte* order was based solely on the affidavit of one Mike Neher, an employee of the State of Idaho, Department of Health & Welfare.[2] Although the affidavit runs on for five pages, the majority has extracted all of the relevant information, which embodies but seven lines. This case being of extreme importance, the moving papers and the court's responsive order are appended hereto. As is readily seen, nothing in that affidavit presented facts demonstrating an immediate need to seize the little children from their mother. If the state agent truly believed that the safety or well-being of the children required immediate removal, then, under I.C. § 16–1612, the state could have acted to immediately remove the children. Such drastic action is justified, however, only where "the child is endangered in his surroundings and prompt removal appears to be necessary to prevent serious physical or mental injury to the child." I.C. § 16–1612. *See, e.g., State v. Mahoney-Williams*, 101 Idaho 280, 611 P.2d 1065 (1980). *See also C. M. v. People*, 601 P.2d 1364 (Colo. 1979) (vague references to a child's best interests cannot be substituted for the specific findings required before a child can be held to be neglected and abandoned). The

---

**2.** It appears that Mr. Neher decided to take the side of the father in this custody dispute. While that in itself did not violate any statutory law, it did result in a state official's affidavit being the sole basis for the *ex parte* order. Thus two branches of the state government, the judiciary and the executive, collaborated and exercised their powers to deprive the mother of her children without a prior hearing. There are other remedies than appeal of the modified custody decree for obtaining redress from such a flagrant abuse of the powers of the state, but that does not make the majority's approval of such action any more correct.

trial court had before it absolutely no factual allegations of imminent harm to the welfare of the children were they to be left in the court-decreed custody of the mother until a full hearing could be held. Nonetheless, the district court issued the *ex parte* order granting temporary custody to the defaulting father.

The only reason advanced by the trial court for this *ex parte* order was that it was issued "for the purpose of maintaining the jurisdiction in this Court." Apparently this reasoning was based on the following allegation in Neher's affidavit, surmising "[t]hat it is further your affiant's *fear* that the natural mother shall soon be leaving this state and shall take the children with her and beyond the immediate jurisdiction of this Court." (Emphasis added.) However, the trial court would have retained jurisdiction *even if the mother did leave the state*. The jurisdiction is a continuing jurisdiction. Moreover, newly enacted I.C. § 5–1003 provides that a court shall retain jurisdiction if "(1) [t]his state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state...."

### B.

The majority of this Court has failed to properly apply the above discussed facts of this case to the rule which they have adopted. The Court holds there is no Due Process violation where adequate justification exists for the *ex parte* order and where provision is made for a full hearing within ten days. The Court then states that such an order may properly be entered *only under compelling circumstances*. It is unquestionably true that the party seeking an *ex parte* order bears the burden of demonstrating compelling reasons before the state may wield its powers to aid one party without giving the other party affected by such

exercise of state powers a chance to respond to the allegations of the moving party. Exceptions to the requirement of a prior hearing have been found only where there is a "countervailing state interest of overriding significance." *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971). *See* L. Tribe, American Constitutional Law 544–45 (1978).

Having recited the correct rule of law, however, the majority then announces that an uncorroborated assertion in an affidavit submitted by the moving party can provide the "compelling circumstances" under which an *ex parte* order may be issued. The error of this position is magnified by the fact that the *assertion* here, that the court might lose jurisdiction if the mother moves out of state, is plainly incorrect *as a matter of law*. Even if it was theoretically possible for the court to lose jurisdiction, the state official who swore out the affidavit gave *no facts* to explain from whence came his fear that the mother and five children would flee the state.

The fears of a state employee that a mother might take her children out of Idaho provides insufficient justification for a district court order taking the children away from the mother, even temporarily. This Court's holding that such fears will support an *ex parte* order, in circumstances where the mother is not allowed the prior opportunity to be heard, is frightening to say the least, and properly understood states simply that there no longer is any due process protection afforded a custodial parent from having her (or his) children, by *ex parte* order of the court, snatched away and given over to the other parent. *And this holding is uttered in spite of the state of the law being that the court would still have jurisdiction even if the children were taken out of the state.* We should hardly indulge in the assumption that courts in other states would be less mindful of the constitutional obligation of rendering full faith and credit to decrees of other states than was this court in *Pincock*. We *should* indulge in the proper assumption that courts in other states will lend their powers

in aiding our courts to exercise their proper jurisdiction.

There is nothing in the balance of the affidavit compelling enough to justify this order. There was no such great threat to the health or welfare of the children that waiting a few days until a contested hearing could be held would have made any difference. The court was in effect deciding, on the basis of this one affidavit, and without the benefit of a response from the person actually having custody of the children, that there had been a material, permanent and substantial change of circumstances requiring an immediate change of custody. This offends every concept of Due Process. That which I think most practicing attorneys and constitutional scholars will find quite offensive in the Court's opinion is the facile attempt to equate a temporary order, entered at the initiation of a divorce action, with this so-called "temporary" order entered after the action has gone to final decree.

The Court's holding today is that Due Process is met, even when a final decree is disregarded, if the court allows the party victimized an opportunity within ten days to attempt to undo the horrendous mischief which has been done by removing a mother's children from her without the requirement of notice or an opportunity to be heard. This is contrary to that which has been forever the practice in this state.

## II.

Obviously entertaining doubts as to the propriety of issuing this *ex parte* order, the district judge was careful to include a paragraph avowing his own impartiality—something I have not previously seen done by a district judge—but at the same time declaring that he extended no credibility to the allegations which appeared in Neher's affidavit. The order contained this most unusual caveat or notice:

"NOTICE IS HEREBY GIVEN that *the provisions of this order do not indicate whether the judge believes* that the relief sought by the defendant is justified, or *that the allegations of the affidavit are true*; that the decision of the judge will only be made after both parties have had an opportunity to present their evidence at the hearing above scheduled; that the provisions of this order which take effect prior to such hearing were made for the purpose of maintaining the jurisdiction of this court until a hearing can be held; *that the judge is impartial. . . ."* (Emphasis added.)

We have here an excellent and experienced judge inexplicably allowing himself to be precipitately moved into a transfer of custody of five children without hearing one whit from the mother,[3] basing his decision on an erroneous statement of law, while at the same time vehemently protesting his lack of any belief in Neher's affidavit and lack of any opinion about the merits. If something orally urged upon the judge at the *ex parte* presentation of Mr. Overman's motion caused the judge to feel compelled to issue such a unique and doubtful order, then, at the least, he should have required further proceedings to be heard before Judge McClintick or another judge in the district. Obviously, despite the protestations in the order, Judge Lodge could not reasonably have signed the order unless he *did* rely upon the allegations of the Neher affidavit.

The language used in the original opinion in *Farrow v. United States* (withdrawn and replaced, but only because of a change in discovered facts), 580 F.2d 1339 (9th Cir. 1978), is appropriate:

"There are a number of reasons for this requirement which derive from the fun-

---

3. It is worthy of note that the mother herein was faced with the herculean task of caring for five children between the ages of 2½ and 7; that the divorce decree was a default decree issued on January 27, 1978, when the father failed to respond to summons; that the motion for order establishing temporary custody was filed September 27, 1978, only eight months after the original decree was entered (and one week after the father had remarried), and that the father apparently was not current on the modest child support payments which the divorce decree obligated him to pay.

damental precept that judges, like the convicts they sentence, are human beings. For example, when the sentencing judge rules on the § 2255 claim or resentences the petitioner, it may be difficult, if not impossible, to ascertain the extent to which his untested recollection of the original sentencing proceeding may subconsciously or otherwise influence his new determination. Moreover, *when a judge has undergone the unsettling process of assessing the punishment of another, it seems entirely plausible that he might attach some emotional commitment to the 'correctness' of his initial determination.* This natural human tendency to reduce the dissonance created in choosing one of several alternatives by thereafter persuading oneself that the chosen alternative is the correct one has been recognized and measured by psychologists. In addition, the possibility exists that the reimposition of the same sentence—supposedly without consideration of the priors—may in some circumstances be a veiled punishment for challenging the original sentence. . . . The mere existence of possibilities such as these subtly dissipates the appearance of fairness of the § 2255 or resentencing proceeding, and the requirement of a different judge, in our view, does much to restore that appearance." *Goodrick v. State*, 98 Idaho 124, 128–29, 559 P.2d 303, 307–08 (1977) (Bistline, J., dissenting) (quoting *Farrow*) (footnotes omitted) (emphasis added).

The same sentiments were expressed in a dissenting opinion in *Wilson v. United States*, 534 F.2d 130 (9th Cir. 1976):

"Even if we could assume that judges, unlike other mortals, are capable of such feats of total recall and edited ex post facto judgment, the process is unfair and will be perceived as unfair. The defendant has no opportunity at all to explore these mental processes or to present any evidence that may reveal other factors that are pertinent to sentencing. Moreover, as other courts have recognized, *judges are susceptible to that fraility of human-kind to stick to a judgment, once*

*uttered, even when later shown that it was wrong."* 534 F.2d at 138 (Hufstedler, J., dissenting) (emphasis added).

*See also, e. g., United States v. Schwarz,* 500 F.2d 1350, 1352 (2d Cir. 1974); *United States v. Vale,* 496 F.2d 365, 367 (5th Cir. 1974); *Mawson v. United States,* 463 F.2d 29, 31 (1st Cir. 1972).

Here the trial judge apparently felt it was necessary to keep the children in this state so that if he did thereafter change the custody order, he would have his hands on the children, so to speak. But this would be no worry unless he had already determined, solely from Neher's affidavit (which he denied believing) that there might be established such a material, permanent and substantial change of circumstances that the best interests of the children would be served by a change of custody. When an initial impression, after hearing only one side, is implanted in the trial judge, which produces the remarkable statements embodied in the order which was entered, the interests of justice require that the judge disqualify himself from the full hearing on the merits.

The order modifying custody should be set aside, the "temporary" *ex parte* order should be set aside, the children should be returned to their mother, with any further proceedings to be assigned to one of the other judges in the district.

## APPENDIX

## MOTION FOR MODIFICATION OF DIVORCE DECREE; TEMPORARY CUSTODY OF MINOR CHILDREN AND ORDER TO SHOW CAUSE

COMES NOW the Defendant, STEVEN G. OVERMAN, by and through his counsel of record, WM. J. BRAUNER, P. A., Nampa, Idaho, and moves the Court for an order granting him temporary custody of the parties' minor children, Stephanie Renae Overman, Kimberly Ann Overman, Dawn Erline Overman, George Merle Overman, and Gerald Dean Overman, until a show cause hearing may be held.

DEFENDANT FURTHER MOVES the Court for an Order directed to the Plaintiff to show cause, if any she has, why the Decree of Divorce of this Court issued on the 27th day of January, 1978, should not be modified as hereinafter set forth:

1. That the original Decree of Divorce provides that the permanent care, custody and control of the above mentioned minor children of the parties is awarded to the plaintiff until the children reach their respective ages of majority, or until a further or contrary or modifying order of this Court, preserving in the defendant the right of visitation with the children at all normal and reasonable times and places. By reason of a material change in circumstances wherein the plaintiff is no longer a fit and proper person to have the care, custody and control of the minor children, said paragraph should be modified to read as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the permanent care, custody and control of Stephanie Renae Overman, Kimberly Ann Overman, Dawn Erline Overman, George Merle Overman, and Gerald Dean Overman, the minor children of the parties hereto, is hereby awarded to the defendant until the said children reach their respective ages of majority, or until a further or contrary or modifying order of this Court."

2. That the original Decree of Divorce provides that the defendant is to pay to the plaintiff as permanent child support, the sum of $75.00 per month per minor child, until the said children reach their respective ages of majority, or are no longer dependent upon the plaintiff, or until a further or contrary or modifying order of this Court. That by reason of a material change in circumstances wherein the plaintiff is no longer a fit and proper person to have the care, custody and control of the minor children and the defendant is seeking the permanent care, custody and control of the minor children, said paragraph should be modified and eliminated in its entirety.

DEFENDANT FURTHER MOVES the Court for a temporary restraining order whereby the plaintiff, or anyone acting for or on her behalf, is restrained and enjoined from annoying, molesting, threatening, or using physical force and violence on the person of the Defendant.

DEFENDANT FURTHER MOVES the Court for a temporary restraining order whereby the Plaintiff, or anyone acting for or on her behalf, is restrained from removing or attempting to remove said minor children from the custody of the defendant, or representative of the defendant.

This motion is based upon the pleadings and files in this action, and more specifically upon the affidavit of Mike Neher filed concurrently herewith, and upon the information and belief that the plaintiff is no longer a fit and proper person to have the care, custody and control of said minor children.

DATED this 26th day of September, 1978.

WM. J. BRAUNER, P. A.

By (s) Gary H. Lew
GARY H. LEW

Attorney for Defendant

I hereby certify that a true and correct copy of the foregoing Motion for Modification of Divorce Decree; Temporary Custody of Minor Children; and Order to Show Cause was mailed to Edwin G. Schiller, Schiller, Williams & Schiller, P.O. Box 21, Nampa, Idaho 83651 by first class mail, postage prepaid, this 26th day of September, 1978.

(s) Gary H. Lew
GARY H. LEW

## AFFIDAVIT

MIKE NEHER, having been duly sworn, deposes and says:

That your affiant is employed by the Department of Health and Welfare as a Social Worker Senior.

That your affiant has, since June, 1978, been acquainted with Lillian A. Overman, Steven G. Overman, the parties in this action, and their minor children:

Stephanie Renae Overman, born 4–15–71
Kimberly Ann Overman, born 8–13–72
Dawn Erline Overman, born 3–8–74
George Merle Overman, born 6–21–75
Gerald Dean Overman, born 6–21–75

That your affiant has reviewed the files of the department and based upon said review, states that the following is a summary of portions of said records, and that the following is based upon your affiant's information and belief.

1. That on or about December 19, 1977, the department received a complaint with reference to the above-mentioned minor children; that it was believed that the mother was leaving the minor children for prolonged periods of time with sitters. The complaint further indicated that Stephanie was not attending school regularly.

2. That on or about January 26, 1978, the department received a complaint with regards to the children and the plaintiff. The complainant indicated that Stephanie is in special education classes due to frequent absenses and does not need to be there. The complainant stated that the children are often left alone without proper supervision, that Stephanie was often left in charge of the remaining children for substantial lengths of time, that the children were not clean and there were numerous male callers of the mother who came and went at all times.

3. That on or about February 14, 1978, the department received a complaint from Steven Overman, the natural father. The complainant reported that the children were not being looked after properly; that the children were often left with neighbors for considerable periods of time; that the children were physically struck by sitters who were attending said children; that Stephanie was not regularly attending school due to the mother's failure to rise and get them ready for school; and that the children were often left attended by a mentally retarded person.

4. That on or about May 8, 1978, the department received a complaint. The complaint stated that the children were often left with neighbors, friends, and even strangers, in short, anyone who would have them; that the children's only source of food was often cereal; that the mother seldom prepared meals for the children; and that the children were in need of clothing and shoes.

5. That on or about June 19, 1978, and June 26, 1978, the department received complaints. The complainant stated that the natural mother had stated that she does not want the children and will place them in a foster home. It is further your affiant's information and belief that the natural mother subsequently signed over custody to the Christian Childrens Home in Boise, but that the natural father became upset and obtained custody of the children at that time. It is your affiant's further information and belief that the natural mother reacquired custody of said minor children through trickery and deceit under the pretext of a visitation.

6. That it is your affiant's information and belief that one or more of the children were attending school or kindergarden and on September 21, 1978, were sent home by the nurse with lice. That the natural mother was given instructions to shampoo said children and return them to school. That it is your affiant's information and belief that said children have not since returned to school.

7. That as recently as September 25, 1978, the department received a complaint that Stephanie and Kim have been retained in first grade and kindergarden, respectively, due to numerous absences. It was further the opinion of the complainant that the children should be removed from the mother's custody.

Your affiant, on September 25, 1978, visited the residence of the natural mother at 1314 Helena, Caldwell, Idaho. Your affiant observed that the children were left attended by a male approximately eighteen years of age. That your affiant did not actually observe said children, but could hear them within the residence.

That it is your affiant's information and belief that the natural mother is currently

frequently seeing one Mark Fortick. That it is your affiant's information and belief that on or about the 23rd day of September, 1978, at 1314 Helena, Caldwell, Idaho, Mark Fortick broke every window in his vehicle. That your affiant has further observed what your affiant believes to be numerous parts of said vehicle scattered nearby the residence.

That it is your affiant's information and belief that a relative of the natural mother was recently arrested at the residence at 1314 Helena, Caldwell, Idaho, for the sawed-off shotgun armed robbery of Ichabod's in Caldwell, Idaho.

That during the immediately preceding weekend, it is your affiant's information and belief that the natural father and one Emma Rodriguez were married. That it is your affiant's further information and belief that Steven and Emma met the natural mother and Mark Fortick in an establishment in Caldwell. That it is your affiant's information and belief that Mark Fortick waived and brandished a firearm. That said fireman was removed and taken from Mark Fortick by the owner of the establishment.

That a Home Study and Evaluation has been conducted by the Department, and recommended placement of the minor children with the natural father has been made.

That your affiant has been personally involved with the above-named individuals since June, 1978, and has discussed this matter with your affiant's superiors. That it is your affiant's information and belief that if the natural father is not successful in his attempt to obtain custody of the minor children, that the Department shall file an action under the Child Protective Act. That further it is your affiant's belief that the removal of the children to the custody of the natural father is in conformance to the best interest and well being of the minor children.

That it is further your affiant's fear that the natural mother shall soon be leaving this state and shall take the children with her and beyond the immediate jurisdiction of this Court.

Further your affiant sayeth not.

(s) Mike Meher
MIKE MEHER

SUBSCRIBED AND SWORN to before me this 26th day of September, 1978.

(s) Gary H. Lew
Notary Public for Idaho.

Residing at Nampa, Idaho.

I hereby certify that a true and correct copy of the above and foregoing Affidavit was duly mailed, postage prepaid, by first class mail, to Edwin G. Schiller, of the firm Schiller, Williams & Schiller, Attorneys for Plaintiff, P.O. Box 21, Nampa, Idaho 83651, this 26th day of September, 1978.

(s) Gary H. Lew
GARY H. LEW

## TEMPORARY ORDER FOR CUSTODY OF MINOR CHILDREN; AND ORDER TO SHOW CAUSE

UPON MOTION of the Defendant and based upon the Affidavit of MIKE NEHER filed therewith; and the Court believing that it is for the best interest and welfare of the minor children of the parties,

IT IS HEREBY ORDERED, AND THIS DOES ORDER That temporary custody of the parties' minor children, Stephanie Renae Overman, Kimberly Ann Overman, Dawn Erline Overman, George Merle Overman, and Gerald Dean Overman, is hereby granted to the Defendant until a show cause hearing may be held;

That the Plaintiff appear and show cause, if any she has, on the 6th day of October, 1978 in the Courtroom of the above entitled Court in Caldwell, Canyon County, Idaho, at the hour of 1:30 o'clock p. m. of said day, why the Decree of Divorce entered herein on the 27th day of January, 1978 should not be modified as set forth in the Motion.

That pending the hearing on said Order to Show Cause, the Plaintiff, or anyone acting for or on her behalf, is hereby restrained and enjoined from annoying, molesting, threatening, or using physical force

and violence on the person of the Defendant.

That Plaintiff, or anyone acting for or on her behalf, is hereby restrained from removing or attempting to remove said minor children from the custody of the Defendant, or representative of the Defendant.

That the Plaintiff, or any person currently having the care or custody of said minor children shall immediately deliver to the Defendant the above named minor children.

NOTICE IS HEREBY GIVEN that the provisions of this order do not indicate whether the Judge believes that the relief sought by the Defendant is justified, or that the allegations of the Affidavit are true; that the decision of the Judge will only be made after both parties have had an opportunity to present their evidence at the hearing above scheduled; that the provisions of this Order which take effect prior to such hearing were made for the purpose of maintaining the jurisdiction in this Court until a hearing can be held; that the Judge is impartial and if a party has any questions hereon, then such party shall contact an attorney who will answer such questions and take the steps necessary to present such party's evidence as provided by rules of court and that any party who violates or conspires to violate any of the provisions of this Order will be held in contempt of this court and may be punished by fine or imprisonment, or by both, therefor.

DATED this 26th day of September, 1978.

(s) Edward J. Lodge
District Judge